600 S.E.2d 211

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Michael ROGERS, Defendant Below, Appellant.**

No. 31566.

Supreme Court of Appeals of West Virginia.

Submitted: April 28, 2004.

Filed: June 17, 2004.

Joseph P. Albright, Jr., Esq., Bradley & Albright, Parkersburg, for the Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Colleen A. Ford, Esq., Assistant Attorney General, Charleston, for the Appellee.

PER CURIAM.

This case is before this Court upon the appeal of Michael Rogers from his convictions by a jury in the Circuit Court of Wood County, West Virginia, of burglary and conspiracy to commit burglary. The convictions arose from the alleged assault of two individuals by appellant Rogers and his alleged co-conspirator, David Dowler. Pursuant to the final order of the Circuit Court entered on August 14, 2002, Rogers was sentenced to 1 to 15 years in the penitentiary upon the burglary conviction and 1 to 5 years upon the conspiracy to commit burglary conviction. The order directs that the sentences be served consecutively.

This Court has before it the petition for appeal, all matters of record and the argument of counsel. Appellant Rogers contends: (1) that the Circuit Court committed error in instructing the jury upon the conspiracy to commit burglary charge, (2) that, under the circumstances of this case, the appellant's convictions of burglary and conspiracy to commit burglary violate his constitutional protections against Double Jeopardy and (3) that the Circuit Court committed error by improperly commenting upon the evidence during the trial. For the reasons stated below, however, this Court concludes that those assignments of error are without merit. Accordingly, the final order of the Circuit Court entered on August 14, 2002, is affirmed.

I.

### FACTUAL AND PROCEDURAL BACKGROUND

On the evening of November 16, 2000, an individual named Brian Drain and his friend, Danny Mackey, were working on some motor vehicles in a parking lot near Drain's apartment in Parkersburg, West Virginia. At some point, they noticed appellant Rogers and David Dowler walking toward them. Dowler was carrying a tire iron. Although the record does not reveal a motive for the events which then occurred, both Drain and Mackey recognized appellant Rogers, and Mackey recognized Dowler.

After a short confrontation, Dowler struck Mackey with the tire iron, and the two began fighting. In the meantime, Drain rushed to his apartment where his wife and two children were present. He called the police and got his rifle. Soon after, Mackey entered the apartment. According to the State, Mackey then attempted to hold the screen door of the apartment shut while appellant Rogers and Dowler were pulling on it in order to gain entry and continue the assault. Although Drain threatened to shoot them, Rogers and Dowler forced their way past the threshold of the apartment. Mackey, however, pushed them back outside. According to the State, appellant Rogers and Dowler then made a second attempt to pull open the screen door while Mackey again tried to hold it shut. The police arrived and apprehended Dowler at the scene. Appellant Rogers, who ran from the area, was arrested a short distance away.

In January 2002, a Wood County grand jury indicted appellant Rogers for burglary and conspiracy to commit burglary. The burglary charge was based upon the contention of the State that, on the evening in question, Rogers broke and entered the dwelling house of Brian Drain "with intent to commit a crime therein," i.e., assault. *W. Va.Code*, 61–3–11 (1993). The conspiracy to commit burglary charge was based upon the contention of the State that appellant Rogers and David Dowler conspired to commit the above offense and that they committed an overt act in furtherance of the conspiracy. *W. Va.Code*, 61–10–31 (1971). Similar charges against David Dowler were severed from the proceedings concerning Rogers.

Appellant Rogers' trial was conducted on June 3, 2002. Rogers testified that he attempted to break up the initial fight between Dowler and Mackey and that he never tried to enter the apartment. His motion for a judgment of acquittal, however, was denied, and the case was submitted to the jury. The jury found Rogers guilty upon both charges. Appellant Rogers was sentenced to 1 to 15 years in the penitentiary upon the burglary conviction and 1 to 5 years upon the conspiracy to commit burglary conviction. The final

order directs that the sentences be served consecutively.

This Court granted appellant Rogers' appeal in September 2003.

## II.

## DISCUSSION

Pursuant to *W. Va.Code*, 61–10–31 (1971), a conspiracy occurs when two or more persons conspire or agree to commit an offense against the State of West Virginia and some overt act is taken by one or more of such persons in furtherance of the object of the conspiracy. *State v. Stevens*, 190 W.Va. 77, 80, 436 S.E.2d 312, 315 (1993); syl. pt. 4, *State v. Less*, 170 W.Va. 259, 294 S.E.2d 62 (1981). As *W. Va.Code*, 61–10–31 (1971), provides: "It shall be unlawful for two or more persons to conspire (1) to commit any offense against the State or (2) to defraud the State ... if, in either case, one or more of such persons does any act to effect the object of the conspiracy." In *Less, supra*, this Court explained:

> The agreement to commit an offense is the essential element of the crime of conspiracy—it is the conduct prohibited by the statute. The agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of an agreement.
>
> \* \* \* \* \* \*
>
> The substantive crime which is the object of the conspiracy can be proven as the overt act.

170 W.Va. at 265, 294 S.E.2d at 67.

Focusing upon the "agreement" requirement for a conspiracy, appellant Rogers challenges the validity of the following instruction given by the Circuit Court to the jury:

> It is not necessary to show that the parties met and actually agreed to undertake the performance of an unlawful act. Further, it is not necessary that they had previously arranged a detailed plan for the execution of the act; nor is it necessary that the parties entered into a formal or expressed agreement. Rather, an agreement can be shown by tacit understanding

between the co-conspirators to accomplish an unlawful act which may be inferred from the circumstances.

According to appellant Rogers, the statement within the instruction that an agreement can be shown by "tacit understanding" erroneously minimized the requirement of an agreement for a conspiracy. In that regard, Rogers asserts that the instruction is defective because it suggested to the jury that, anytime two or more individuals commit an unlawful act together, a conspiracy is automatically shown. That assertion is also the basis of appellant Rogers' Double Jeopardy claim, i.e., that it was a violation of Rogers' protection against Double Jeopardy to convict and sentence him for both burglary and conspiracy to commit burglary solely upon the determination of the jury that he and David Dowler jointly entered the apartment.

█ Significantly, however, Rogers did not object to the above instruction. As this Court held in syllabus point 3 of *State v. Gangwer*, 169 W.Va. 177, 286 S.E.2d 389 (1982): "The general rule is that a party may not assign as error the giving of an instruction unless he objects, stating distinctly the matters to which he objects and the grounds of his objection." Syl. pt. 8, *State v. Garrett*, 195 W.Va. 630, 466 S.E.2d 481 (1995); syl. pt. 4, *State v. McCarty*, 184 W.Va. 524, 401 S.E.2d 457 (1990); Vol. II, F.D. Cleckley, *Handbook on West Virginia Criminal Procedure* 2d, pgs. 222–226 (Michie—1993). As stated in *State v. Allen*, 208 W.Va. 144, 539 S.E.2d 87 (1999): "When reviewing challenges to jury instructions, we generally look first to the record of the trial court proceedings to ensure that the claimed instructional error has been properly preserved for appellate review." 208 W.Va. at 150–51, 539 S.E.2d at 93–94.

█ Acknowledging the absence of an objection, appellant Rogers argues before this Court that the giving of the instruction constituted "plain error." Relevant to that inquiry is Rule 30 of the West Virginia Rules of Criminal Procedure which states, in part, that a circuit court or appellate court "may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made the subject

of objection." *See also*, W.Va. R.Crim. P. 52(b), which also recognizes the plain error doctrine. As noted in syllabus point 4 of *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988), however, the doctrine is not without limitations:

> The plain error doctrine contained in Rule 30 and Rule 52(b) of the West Virginia Rules of Criminal Procedure is identical. It enables this Court to take notice of error, including instructional error occurring during the proceedings, even though such error was not brought to the attention of the trial court. However, the doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result.

Syl. pt. 1, *State v. Richards*, 195 W.Va. 544, 466 S.E.2d 395 (1995); syl. pt. 6, *State v. Mayo*, 191 W.Va. 79, 443 S.E.2d 236 (1994); syl. pt. 6, *State v. Nicholas*, 182 W.Va. 199, 387 S.E.2d 104 (1989).

Applying a plain error analysis to this case, this Court cannot conclude that the giving of the above instruction warrants the granting of relief to appellant Rogers. While this Court noted in *State v. Burd*, 187 W.Va. 415, 419 S.E.2d 676 (1991), that, in *State v. Kilgus*, 128 N.H. 577, 519 A.2d 231 (1986), the phrase "tacit understanding between the parties to cooperate in an illegal course of conduct" was held to support a conviction for conspiracy, 187 W.Va. at 420, 419 S.E.2d at 681, a fair reading of the instruction herein shows that, in any event, the phrase "tacit understanding" was mitigated by the remaining language in the same sentence to the effect that an agreement may be "inferred" from the circumstances. As discussed above, this Court's opinion in *Less* states that the agreement requirement may be "inferred" from the words and actions of the conspirators. 170 W.Va. at 265, 294 S.E.2d at 67.

Moreover, this Court, in *Less*, noted that the substantive crime which is the object of the conspiracy can be proven as the conspiracy's overt act. 170 W.Va. at 265, 294 S.E.2d at 67. In this case, as the evidence of the State revealed, the substantive offense of

burglary occurred when appellant Rogers and David Dowler forced their way past the threshold of Drain's apartment. Prior thereto, however, according to the State, Rogers and Dowler followed or pursued Drain and Mackey to the apartment from the parking lot and acted jointly in trying to pull the screen door open while Mackey held it shut. After gaining entry and then being pushed by Mackey out of the apartment, Rogers and Dowler made a second, joint attempt to pull the door open and were doing so when the police arrived.

■ Accordingly, inasmuch as appellant Rogers and Dowler engaged in actions in addition to the single, overt act of crossing the threshold of the apartment, the assertion of appellant Rogers that the instruction minimized the agreement requirement of a conspiracy, by merging the agreement with the burglary itself, is without merit. Moreover, such a separation of the actual burglary from the agreement to commit burglary to be inferred between appellant Rogers and Dowler emphasizes the differing elements of burglary and conspiracy and, therefore, negates appellant Rogers' Double Jeopardy claim. As the State points out with regard to the proceedings below:

> [T]he prosecutor not only presented evidence of both the agreement and the overt act, he specifically argued that the agreement was evidenced by appellant's and his co-conspirator's repeated joint attempts to break into Mr. Drain's home. * * * Furthermore, at no time was the jury instructed, nor did the prosecutor argue, that both the agreement and the overt act were proved by the "breaking element of burglary."

Accordingly, this Court finds no error with regard to the issues appellant Rogers raises concerning the above instruction.

■ Finally, appellant Rogers relies upon plain error in his contention that the Circuit Court improperly commented upon the evidence during the trial. During the cross-examination of Brian Drain by Rogers' attorney, the following exchange took place:

> A. * * * I did tell them that I was going to shoot them; yes, sir, I did.

> Q. And yet they persisted to try to come inside?

> A. Yes, they did.

> Q. Any of them have any guns?

> A. No, they did not. To my best knowledge, they didn't.

> Q. Kind of crazy of them to try to come into the house when somebody has told them they had a gun; right?

> A. Yes, very.

> [The State]: Objection, Your Honor. That calls -

> The Court: Sustained. Of course, it is logical. Damned fools, but I sustain the objection on that ground. (General laughter)

Appellant Rogers asserts that his attorney's purpose in the above cross-examination was to impeach Drain's credibility by suggesting that it was unlikely that Rogers ever tried to enter the apartment, especially when Rogers' knew that Drain was holding a firearm. Thus, appellant Rogers argues that the Trial Judge's reference to him and Dowler as "damned fools" unfairly prejudiced the defense because the comment belittled Rogers in front of the jury and indicated to the jury that both Rogers and Dowler were present at the door and, in fact, persisted in trying to enter the apartment.

■ As long recognized, "[i]n the trial of a criminal case the jurors, not the court, are the triers of the facts, and the court should be extremely cautious not to intimate in any manner, by word, tone or demeanor, his opinion upon any fact in issue." Syl. pt. 7, *State v. Austin,* 93 W.Va. 704, 117 S.E. 607 (1923). *See also,* syl., *State v. Perkins,* 130 W.Va. 708, 45 S.E.2d 17 (1947); syl. pt. 3, *State v. Summers,* 118 W.Va. 118, 188 S.E. 873 (1936); syl., *State v. Songer,* 117 W.Va. 529, 186 S.E. 118 (1936); syl. pt. 4, *State v. Shelton,* 116 W.Va. 75, 178 S.E. 633 (1935); syl. pt. 3, *State v. Waters,* 104 W.Va. 433, 140 S.E. 139 (1927). As syllabus point 4 of *State v. Wotring,* 167 W.Va. 104, 279 S.E.2d 182 (1981), observes:

> The trial judge in a criminal trial must consistently be aware that he occupies a unique position in the minds of the jurors

 

and is capable, because of his position, of unduly influencing jurors in the discharge of their duty as triers of the facts. This Court has consistently required trial judges not to intimate an opinion on any fact in issue in any manner. In criminal cases, we have frequently held that conduct of the trial judge which indicates his opinion on any material matter will result in a guilty verdict being set aside and a new trial awarded.

Syl. pt. 8, *State v. Leep*, 212 W.Va. 57, 569 S.E.2d 133 (2002); *State v. Wilder*, 177 W.Va. 435, 440, 352 S.E.2d 723, 728 (1986).

Again, applying a plain error analysis to the circumstances of this case, this Court is of the opinion that the above comment of the Trial Judge does not warrant relief to appellant Rogers. First, it should be noted that the instructions given to the jury at the close of the case included the following statement: "Nothing that this Court has said or done, at any time during the trial, is to be considered by you as a comment by this Court upon the evidence, nor upon the weight of the evidence." In addition, during his closing argument, appellant Rogers' attorney referred to the Trial Judge's statement of the words "damned fools" in an effort to show that Rogers' never tried to enter the apartment, since only a "fool" would have done so knowing that Drain was holding a firearm. As Rogers' attorney told the jury:

> I would submit to you that Mr. Rogers' version is certainly much more plausible than the testimony that you have heard from Mr. Mackey and Mr. Drain. I thought the judge said it the best. You would be a fool, absolute, complete fool, or words to that effect, to come into a residence, knowing that the person that is inside the residence has a gun and is going to point it at you. Well, ladies and gentlemen, I would again state that I think the evidence is clear that Mr. Rogers didn't make an effort to come into the house.

Accordingly, while the comment of the Trial Judge is not to be condoned, this Court concludes that it was deprived of much of its significance as a result of appellant Rogers' closing argument. Therefore, it would be difficult to sustain the proposition that the Trial Judge's comment constituted plain error.

## III.

## CONCLUSION

Upon all of the above, the final order of the Circuit Court of Wood County entered on August 14, 2002, is affirmed.

Affirmed.

Justice ALBRIGHT, deeming himself disqualified, did not participate in the decision of this case.

Judge LOUIS H. BLOOM, sitting by temporary assignment.