607 S.E.2d 474

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Kristy DONLEY, Defendant Below, Appellant.**

**No. 31649.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 2004.

Decided Dec. 2, 2004.

---

Darrell V. McGraw, Jr., Attorney General, Colleen A. Ford, Assistant Attorney General, Charleston, for the Appellee.

Robert Twitty, Public Defender Corporation, Weirton, for the Appellant.

ALBRIGHT, Justice:

This is an appeal by Kristy Donley (hereinafter "Appellant") from an order entered by the Circuit Court of Hancock County subsequent to a jury verdict finding the Appellant guilty of eight counts of concealment of minor children. The Appellant received a sentence of probation and home confinement. On appeal, the Appellant contends that (1) the doctrine of desuetude should render the statute under which she was convicted void; (2) the lower court erred by failing to sua sponte declare a mistrial after a juror read a portion of a newspaper article concerning the case; (3) the lower court erred by admitting a family court order into evidence; and (4) the prosecutor violated a pre-trial admonition regarding questioning the Appellant concerning a wedding ring. After thorough review of the record, briefs, and applicable precedent, we reverse the Appellant's conviction and remand to the lower court for a new trial.

## I. Factual and Procedural History

Douglas and Kristy Donley were married in 1987, and they have two daughters, Ashley and Kadi. The parties were separated in 1999, a complaint for divorce was filed on February 17, 1999, and a final divorce order was entered by the Circuit Court of Hancock County on April 10, 2001. Subsequent to the divorce, Mr. Donley was granted visitation rights with the daughters, and guardian ad litem Cathryn Nogay was appointed. Based upon the Appellant's extensive interference with scheduled visitations between Mr. Donley and the daughters and her denial of access to the daughters, the family court[1] transferred custody of the children to Mr. Donley. The children resided with their father for approximately one and one-half months, during which the Appellant continued to interfere with custody and allegedly attempted to alienate the children from their father emotionally. Mr. Donley returned primary custody to the Appellant voluntarily due to the conflicts and adjustment difficulties.

During January, February, and March 2002, Mr. Donley arranged visitation through the West Virginia State Police, in an attempt to enforce his visitation rights. The parties were to meet at the police station to exchange custody of the children. If the Appellant did not appear by 9:15 a.m. on designated days, Mr. Donley was to accompany police officers to the Appellant's home to obtain the children. Mr. Donley asserted that on eight occasions, the Appellant failed to present the children for the scheduled visitation.

By order dated April 8, 2002, the Judge of the Family Court of Hancock County entered an order setting forth the visitation requirements to which the parties should be bound. In the April 2002 term, based upon the Appellant's alleged continued violation of the family court order, a Hancock County Grand Jury indicted the Appellant on eight felony counts of concealment of a minor child from a person entitled to visitation, in violation of West Virginia Code § 61–2–14d (1984) (Repl. Vol. 2000).[2] Subsequent to a January 2003

---

1. The record before this Court consists of the criminal charges, related documentation, and the trial transcript. Because our record does not include documentation from the underlying civil action in the divorce case, the record does not reflect the exact dates for the various transfers of primary custody between the Appellant and Mr. Donley.

2. The record does not disclose why the Appellant's conduct in this case was not first addressed in the family court by a proceeding to determine if the Appellant's conduct was in contempt of court. It appears that an effort to deal with the allegedly recalcitrant conduct of the Appellant might have been successfully dealt with in the civil case context before criminal proceedings

jury trial, the Appellant was convicted on all eight counts and received a sentence of probation and home confinement. The Appellant now appeals.

## II. Standard of Review

The Appellant has presented several assignments of error, as briefly outlined above. Our review is governed, in part, upon syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), in which this Court stated as follows: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Our review of the admissibility of evidence is governed by syllabus point two of *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983), providing as follows: " 'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596, 599 (1983)." Pursuant to those standards of review, we evaluate the Appellant's claims.

## III. Discussion

### A. Doctrine of Desuetude

The Appellant asserts that West Virginia Code § 61–2–14d, the statute under which she was convicted, should be rendered void under the doctrine of desuetude. *Black's Law Dictionary* 458 (7th ed. 1999) defines desuetude as "1. Lack of use; obsolescence through disuse. 2. The doctrine holding that if a statute or treaty is left unenforced long enough, the courts will no longer regard it as having any legal effect even though it has not been repealed." In syllabus point three of *Committee on Legal Ethics v. Printz*, 187 W.Va. 182, 416 S.E.2d 720 (1992), this Court explained:

Penal statutes may become void under the doctrine of desuetude if:

(1) The statute proscribes only acts that are *malum prohibitum* and not *malum in se;*

(2) There has been open, notorious and pervasive violation of the statute for a long period; and

(3) There has been a conspicuous policy of nonenforcement of the statute.

Thus, any evaluation must commence with an attempt to distinguish between crimes that are *malum prohibitum* and crimes that are *malum in se*. "Crimes that are *malum in se* will not lose their criminal character through desuetude, but crimes that are *malum prohibitum* may." *Printz*, 187 W.Va. at 188, 416 S.E.2d at 726. A crime that is *malum in se* is "[a] crime or an act that is inherently immoral, such as murder, arson, or rape[,]" *Black's Law Dictionary* 971 (7th ed. 1999), while a crime that is *malum prohibitum* is "[a]n act that is a crime merely because it is prohibited by statute, although the act itself is not necessarily immoral." *Id.*

In the present case, the crime of which the Appellant was convicted, concealing a minor child in violation of a court order, defines a *malum in se* act, rather than a *malum prohibitum* act. The act of concealing a child is inherently wrong, even if not criminalized by a statute. Additionally, this case fails to satisfy the second prong of the *Printz* test, requiring a showing of "open, notorious, and pervasive violation of the statute for a long period...." 187 W.Va. at 183, 416 S.E.2d at 721, syl. pt. 3. The Appellant has presented no evidence that individuals are committing this crime without prosecution. Neither has she presented any evidence that there is "a conspicuous policy of nonenforcement." *Id.* at 183, 416 S.E.2d at 721, syl. pt. 3.[3]

Our review of the Appellant's assignment of error dealing with desuetude persuades us that the statute under which the Appellant was convicted is not void. As the Connecticut appellate court explained, "[t]he doctrine of desuetude, the concept that

appeared necessary to the prosecuting authorities of Hancock County.

**3.** The Appellant did assert that the statute had not been recently utilized in Hancock County.

Even if that statistic were proven through admissible evidence, however, it is insufficient in scope to satisfy the *Printz* requirement of nonenforcement.

374

a statute may be void because of its lack of use, is founded on the constitutional concept of fairness embodied in federal and state constitutional due process and equal protection clauses." *State v. Linares*, 32 Conn. App. 656, 630 A.2d 1340, 1346 n. 11 (1993), *overruled on other grounds by State v. Linares*, 232 Conn. 345, 655 A.2d 737 (1995). In other words, "[t]he problem [of applying, or refusing to apply, the rubric of desuetude] must be approached in terms of that fundamental fairness owed to the particular defendant that is the heart of due process." *United States v. Elliott*, 266 F.Supp. 318, 326 (1967). We find no fundamental fairness violation in the present case. Based upon this Court's finding that the Appellant has failed to introduce evidence sufficient to satisfy the criteria outlined in *Printz*, we find that the Appellant's assertion regarding the doctrine of desuetude must fail.

### B. Alleged Juror Bias

The Appellant also contends that the lower court erred by failing to sua sponte order a mistrial or to remove a juror once it was discovered that the juror had read a newspaper article concerning the trial. The lower court extensively questioned the juror concerning his perusal of the news article and specifically asked Appellant's counsel whether he had any further questions of the juror. Appellant's counsel replied, "No, I think you covered it." Most significantly, when asked by the lower court whether there was any objection to its finding that the juror "had not been prejudiced in any way," Appellant's counsel responded, "No, Your Honor." Specifically, the following exchange occurred:

Q. Mr. Twitty [Appellant's counsel], do you wish to inquire?

MR. TWITTY: No. I think you covered it.

JUDGE GAUGHN: I'm going to find that he's not been prejudiced in any way. The indictment contains all the same information in much greater detail than what that portion of the article has. I'm not going to excuse this juror. I don't believe he's been tainted in any way. Do you have any objection to that?

MR. TWITTY: No, Your Honor.

Thus, it is uncontested that no objection was preserved on the issue of juror prejudice. We further find that Appellant's counsel affirmatively waived any argument the Appellant may have had concerning the alleged juror bias.

The existence of such affirmative waiver and intentional relinquishment of the right to object to the court's findings precludes this Court from utilizing the plain error doctrine to reverse on this issue. As this Court stated in syllabus point eight of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995):

Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right— the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

This Court also observed in *State v. Knuckles*, 196 W.Va. 416, 473 S.E.2d 131 (1996), that "waiver necessarily precludes salvage by plain error review." 196 W.Va. at 421, 473 S.E.2d at 136. "In other words, '[w]hen a right is waived, it is not reviewable even for plain error.'" *State v. Myers*, 204 W.Va. 449, 460, 513 S.E.2d 676, 687 (1998) (quoting *State v. Crabtree*, 198 W.Va. 620, 631, 482 S.E.2d 605, 616 (1996)); *see also Morris v. Painter*, 211 W.Va. 681, 686, 567 S.E.2d 916, 921 (2002) (Davis, Chief Justice, dissenting).

Based upon the foregoing analysis, we find that the Appellant is not entitled to relief on the issue of alleged juror bias.

### C. Family Court Order

The Appellant also asserts that the lower court erred by admitting an allegedly prejudicial family court order dated April 8, 2002, into evidence in the criminal trial. Specifi-

cally, the Appellant alleges that the family court order was biased and unduly prejudicial to the Appellant and that it should have been excluded.[4] Further, the Appellant asserts that the prejudice inherent in that family court order could have been reduced if certain portions of the order had been redacted. While the Appellant did object to the introduction of the entire order at trial, she did not approach the issue of redaction or suggest which portions of the order should be redacted.

The objections made by the Appellant to the family court order were based upon numerous inflammatory statements contained in the order.[5] The Appellant also emphasizes that she was not represented by counsel at the time the family court order was entered. The findings of fact section of the order states that Mr. Donley believed he had suffered a "complete alienation of parental affection" due to the Appellant's actions. The order also states the family court judge's own perceptions of the relationship as follows: "The Guardian ad Litem in this matter, Cathryn Nogay, spent tireless hours investigating this matter, and engaging in efforts to establish a relationship between this father and his daughters, in the face of overwhelming opposition from the plaintiff, their mother." The family court order concluded that the Appellant

> was responsible for instigating the bad acts engaged in by the two children when they were visiting and living with their father. Some of their actions involved stealing answering machine tapes from their father's residence, vandalizing the inside of their father's car, and acting negatively towards their father's new wife. All

these actions were orchestrated by the plaintiff.

The court also stated as follows:

> The Court perceives this not only because of the plaintiff's demeanor with regard to these actions, but also based upon the fact that the nature of the acts were those that this Court does not believe minor children would have instigated, but rather seemed very like those types of actions which would have been perpetrated by the plaintiff or at the plaintiff's behest.

In the conclusions of law section of the family court order, the court stated: "This Court has never seen a more egregious set of circumstances than the brainwashing that these two little girls have undergone at the hands of their mother." The order continues: "The Court has seen no evidence throughout the long history of this case that the plaintiff is willing to comply with this Court's Orders when they direct the reunification of her children with their father, the defendant." In further explanation, the order provides as follows:

> As stated before, this Court has never seen, in all it's [sic] years of involvement with family issues, a more blatant example of parental alienation. The plaintiff's failure to cooperate with counseling efforts, and failure to heed warnings by this Court were so obvious that this Court felt it had no choice but to award the defendant primary residential parent status during the pendency of this case. But the defendant faced such egregious difficulties with the children, that he gave up his primary resi-

4. The essential questions of admissibility are governed, in part, by Rule 403 of the West Virginia Rules of Evidence, providing as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

5. The Appellant objected to introduction of the family court order, as follows:
 MR. TWITTY: Your Honor, I'm going to object to the admissions. There are statements that she brainwashed the children. As Ms. Nogay [the guardian ad litem] stated previously, they

never had a hearing where the children were allowed to participate in freely. I don't know how, without a record, this finding that she brainwashed the children which is extremely prejudicial to her position to be presented to the jury.
. . . .
JUDGE GAUGHN: Okay. Although, it is highly prejudicial, it is the Order that, in fact, the defendant allegedly violated which she concealed the minor children from the person who was entitled to visitation. For that reason, I'm going to admit it into evidence over the objection.

dential parent status and returned the children to the plaintiff.

Prior to enunciating its final resolution of this matter, the family court order explained:

This Court sees no benefit to these children by incarcerating their mother. By all accounts from the Guardian ad Litem, whose opinion this Court values, the plaintiff is a good mother in all aspects except her blinding hatred of the defendant, and unyielding drive to keep him from their children. Granted, this is a serious, critical flaw in the plaintiff's character, and it has, without a doubt, damaged these children severely, but the children have, sadly, fared no better in the custody of their father, as evidenced by his act of returning them to the plaintiff.

"Notwithstanding the unending barriers which the plaintiff will certainly attempt to erect, this Court does not believe that her behavior should be rewarded, and thus the Court will direct that some parenting time occur with the defendant." The order thereafter recited the parenting time to which each parent would be entitled and the manner in which visitation would be accomplished. The court also stated the "clear and certain belief ... that the plaintiff has substantially and permanently harmed the defendant by alienating his children from him."

■ In determining issues of admissibility, as stated above, this Court has long embraced the concept that "[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." Syl. Pt. 2, *Peyatt*, 173 W.Va. at 318, 315 S.E.2d at 575. In keeping with that principle, this Court has applied the abuse of discretion standard in its review of a trial court's Rule 403 decision regarding whether the probative value of evidence is substantially outweighed by its prejudicial effect. In *Gable v. Kroger Co.*, 186 W.Va. 62, 410 S.E.2d 701 (1991), this Court explained as follows:

Rules 402 and 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude any evidence the probative value of which is substantially outweighed by the

danger of unfair prejudice to the defendant. Such decisions are left to the sound discretion of the trial judge....

186 W.Va. at 66, 410 S.E.2d at 705. As Justice Cleckley articulated in syllabus point nine of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994), the seminal West Virginia case on Rule 403:

Although Rules 401 and 402 of the West Virginia Rules of Evidence strongly encourage admission of as much evidence as possible, Rule 403 of the West Virginia Rules of Evidence restricts this liberal policy by requiring a balancing of interests to determine whether logically relevant is legally relevant evidence. Specifically, Rule 403 provides that although relevant, evidence may nevertheless be excluded when the danger of unfair prejudice, confusion, or undue delay is disproportionate to the value of the evidence.

■ In evaluating the Appellant's allegations in the present case, the guidance of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), is of assistance. In that case, this Court explained that in order to perform a "Rule 403 balance, we must assess the *degree* of probity of the evidence, which, in turn, depends on its relation to the evidence and strategy presented at trial in general." 194 W.Va. at 682, 461 S.E.2d at 188.

The mission of Rule 403 is to eliminate the obvious instance in which a jury will convict because its passions are aroused rather than motivated by the persuasive force of the probative evidence. Stated another way, the concern is with any pronounced tendency of evidence to lead the jury, often for emotional reasons, to desire to convict a defendant for reasons other than the defendant's guilt.

*Id.* at 682–83, 461 S.E.2d at 188–89. In *United States v. Ham*, 998 F.2d 1247 (4th Cir.1993), *cert. denied, Ham v. United States*, 516 U.S. 986, 116 S.Ct. 513, 133 L.Ed.2d 422 (1995), the United States Court of Appeals for the Fourth Circuit stated: "We have defined undue prejudice as " 'a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the pro-

bative value of the offered evidence." ' " 998 F.2d at 1252 (citations omitted). Under Rule 403, "[u]nfair prejudice does not mean damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggests [sic] decision on an improper basis." *State v. LaRock*, 196 W.Va. 294, 312, 470 S.E.2d 613, 631 (1996).

In an appellate review under the abuse of discretion standard, this Court must inquire regarding whether the lower court ignored a material factor meriting considerable weight, relied on an improper factor, or made a mistake in weighing the material factors. *State v. Calloway*, 207 W.Va. 43, 47, 528 S.E.2d 490, 494 (1999). In *Guthrie*, this Court acknowledged that the prosecution's "need for this evidence and the closely related question of alternatives available" must also be evaluated in determining the admission of excessively prejudicial evidence. 194 W.Va. at 683, 461 S.E.2d at 189. "In applying Rule 403, it is pertinent whether a litigant has some alternative way to deal with the evidence that it claims the need to rebut that would involve a lesser risk of prejudice and confusion." *Id.* at 683, 461 S.E.2d at 189.

Recognizing the periodic need to limit introduction of relevant evidence, even in the realm of prior orders concerning the same or similar allegations or factual scenarios, the Texas Court of Appeals in *Silva v. Enz*, 853 S.W.2d 815 (Tex.App.1993), found that a prior order disestablishing the mother's husband as the biological father of a child, even if relevant, would not be admitted in a subsequent paternity action against the putative father. The court held that "it was not an abuse of discretion for the trial court to determine that its probative value would have been substantially outweighed by the danger of unfair prejudice. ..." 853 S.W.2d at 819. Similarly, in *First National Bank of Wynne v. Hess*, 23 Ark.App. 129, 743 S.W.2d 825 (1988), the court affirmed a trial judge's exclusion of a United States Bankruptcy Court order regarding a bank's interest in property that was the subject of the suit. The *Hess* court explained that notice was the primary issue to be developed and the date

of the bankruptcy court's order had been discussed. The court stated: "Because the content of the order had been discussed in testimony, there was no need to admit a redundant document into evidence. Moreover, the probative value of the order to the issue at trial would have been substantially outweighed by the confusion of issues which would have resulted from its introduction." *Id.* at 829.

Similarly, in *McCorkle Farms, Inc. v. Thompson*, 79 Ark.App. 150, 84 S.W.3d 884 (2002), the Arkansas appellate court noted that a judgment from another case was not typically admitted under common law. 84 S.W.3d at 888; *see also Nipper v. Snipes*, 7 F.3d 415 (4th Cir.1993); *United States Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275 (11th Cir. 2001); *United States v. Jones*, 29 F.3d 1549 (11th Cir.1994). "A practical reason for denying a judgment or administrative agency report evidentiary effect is the difficulty of weighing a judgment or report, considered as evidence, against whatever contrary evidence a party to the current suit might want to present." 84 S.W.3d at 888. The *McCorkle* court also noted that "[t]he difficulty must be especially great for a jury, which is apt to give exaggerated weight to an official finding of a state body [Plant Board Pesticide Committee]." *Id.* The court reasoned: "By having the Plant Board's report in evidence, the jury was placed in a position of being forced to either reach a conclusion different from that reached by an official agency of the State of Arkansas or to adopt that same conclusion, despite believing that the evidence actually supported a different conclusion because it *was* made by an official agency." *Id.*

This Court has also been consistently mindful of the fact that fundamental fairness in a criminal proceeding requires an unbiased judge. In *State v. Rogers*, 215 W.Va. 499, 600 S.E.2d 211 (2004), this Court reiterated such principles in syllabus point three, as follows: " 'In the trial of a criminal case the jurors, not the court, are the triers of the facts, and the court should be extremely cautious not to intimate in any manner, by word, tone or demeanor, his opinion upon any fact in issue.' Syl. pt. 7, *State v. Austin*,

93 W.Va. 704, 117 S.E. 607 (1923)." Likewise, in syllabus point four, the *Rogers* court stated:

"The trial judge in a criminal trial must consistently be aware that he occupies a unique position in the minds of the jurors and is capable, because of his position, of unduly influencing jurors in the discharge of their duty as triers of the facts. This Court has consistently required trial judges not to intimate an opinion on any fact in issue in any manner. In criminal cases, we have frequently held that conduct of the trial judge which indicates his opinion on any material matter will result in a guilty verdict being set aside and a new trial awarded." Syl. pt. 4, *State v. Wotring*, 167 W.Va. 104, 279 S.E.2d 182 (1981).

We acknowledge that the comments objected to in the present case were not made by the sitting trial judge in the criminal case. They were, however, generated by a family court judge who addressed almost identical facts and relationships and were therefore capable of effectuating a similar adverse impact on the jury. In the case sub judice, the criminal act of which the Appellant was accused was concealment of her two minor children. While the order she violated in so doing was unarguably relevant in her criminal prosecution, judicial notice could have been taken of the existence of the order or specific portions of the order could have been presented verbatim to the jury.

To expose the jury to the inflammatory remarks and personal judgments stated by the family court judge, however, was tantamount to informing the jury that a judge in a related civil action had already evaluated the Appellant's character and had adjudged her capable of egregious acts toward her former husband involving the custody and visitation of their children. Because these remarks were expressed by a judicial officer and encompassed within an official document which the Appellant allegedly violated, the jury could have assigned considerable weight to the family court order's conclusions regarding the Appellant's character and propensity to engage in inappropriate divisive actions such as the very action she was accused of committing in the criminal case to which they were assigned as jurors.

 We hold that a family court order underlying or precipitating a criminal charge against one of the parties may be relevant in the criminal prosecution and may be admissible in the criminal trial, within the discretion of the trial court, to the extent necessary to establish the parameters of the prior family court order and/or any alleged violation thereof. In evaluating the admissibility issue, a trial court should consider whether the order (1) contains legal or factual conclusions on issues to be determined by the jury in the criminal case; or (2) should be partiall; or wholly excluded based upon an analysis of probative value and prejudicial effect as mandated by Rule 403 of the West Virginia Rules of Evidence.

Based upon our evaluation of the admissibility issue in the case subjudice, this Court finds that the lower court abused its discretion by permitting the unabridged family court order to be introduced into evidence in its entirety where the probative value of the entire text of the order was substantially outweighed by the danger of unfair prejudice. The stern and condemning nature of the family court's comments in the order presented a real danger of unfair prejudice in the criminal prosecution. While the order was evidence of a material element of the crime, its existence, its legal effect, and the Appellant's apparent violation could have been conveyed, with some effort, in a manner which did not disclose the full extent of the family court's negative comments about the Appellant's character. We reverse the Appellant's conviction on this basis and grant the Appellant a new trial.[6]

Reversed and Remanded.

---

6. We find no merit in the Appellant's assertion that she should not have been questioned regard-

ing a wedding ring. No objection was raised to such questioning at trial, and the Appellant had opened the door to such inquiry by intimating that she had fully complied with the family law master order which involved the ring and other items owned by the Appellant and/or Mr. Donley.