No. 21-0456 – *State of West Virginia v. Alexander Paul Delorenzo*

FILED
**November 18, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WOOTON, Justice, dissenting, joined by Chief Justice Hutchison:

I primarily take issue with the majority's failure to recognize the obvious: that the circuit court's refusal to allow the petitioner's expert witness, Michael J. Marshall, Ph.D., to testify as to his Asperger's Syndrome Disorder ("ASD") gutted the petitioner's ability to advance his sole defense, lack of intent, thereby violating his constitutional right to a fair trial. I also disapprove of the majority's new syllabus point three, which was created – in the complete absence of any law to support it – simply as a means to justify the circuit court's admonishments directed at the petitioner during the course of his testimony. For these reasons, I respectfully dissent.

A fundamental component of the due process guarantees enumerated in article III, section 14 of the West Virginia Constitution is that "a trial judge may not make an evidentiary ruling which deprives a criminal defendant of certain rights, such as the right . . . to offer testimony in support of his or her defense[.]" *State v. Jenkins,* 195 W.Va. 620, 628, 466 S.E.2d 471, 479 (1995); *see also State v. Whitt*, 220 W. Va. 685, 649 S.E.2d 258 (2007), *modified on other grounds by State v. Herbert*, 234 W. Va. 576, 767 S.E.2d 471 (2014).[1] In *Whitt*, we explained that

---

[1] In *Herbert*, this Court held that

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id*. at 691, 649 S.E.2d at 264 (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)).

In *State v. Guthrie*, 205 W. Va. 326, 518 S.E.2d 83 (1999), where certain evidence had been refused on the ground that its admission would violate the rape shield statute, W. Va. Code § 61-8B-11 (2020), we formulated the following test:[2]

in a criminal trial, when a non-party witness intends to invoke the constitutional privilege against self-incrimination, the trial court shall require the witness to invoke the privilege in the presence of the jury. The constitutional privilege against self-incrimination may only be invoked when a witness is asked a potentially incriminating question. To the extent [*Whitt*] is inconsistent with this holding, it is hereby modified."

234 W. Va. at 584, 767 S.E.2d at 479, & Syl. Pt. 2.

[2] "The *Guthrie* test was developed under the rape shield law that existed prior to the adoption of [West Virginia Rule of Evidence] Rule 412 in 2014. The test, however, still is workable for a constitutional challenge under Rule 412(b)(1)(D)." *State ex rel. Harvey v. Yoder*, 239 W. Va. 781, 786 n.9, 806 S.E.2d 437, 442 n.9 (2017) (citing *State v. Timothy C.*, 237 W. Va. 435, 444, 787 S.E.2d 888, 897 (2016)).

> The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense. Under this test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion.

*Guthrie*, 205 W. Va. at 330, 518 S.E.2d at 87, Syl. Pt. 6. In the instant case, the appendix record – albeit incomplete, as the majority notes – is sufficient to demonstrate that the proposed testimony of the petitioner's expert witness, Dr. Marshall, was not only relevant but was critical to his defense;[3] that its probative value outweighed any prejudice that the State might assert;[4] and that the State had no compelling interests in excluding this evidence. Therefore, I would find that the circuit court abused its discretion and was clearly wrong[5] in excluding the expert's testimony, and that the petitioner was thereby deprived of his right to a fair trial.

---

[3] *See* W. Va. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); *see also* W. Va. R. Evid. 402 ("Relevant evidence is admissible . . . .")

[4] *See* W. Va. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

[5] "While ordinarily rulings on the admissibility of evidence are largely within the trial judge's sound discretion, a trial judge may not make an evidentiary ruling which deprives a criminal defendant of certain rights, such as the right . . . to offer

Relevance. The petitioner was charged with two violations of West Virginia Code section 61-8C-3(a) (2020), which provides that "[a]ny person who, knowingly and willfully, sends or causes to be sent or distributes, exhibits, possesses, *electronically accesses with intent to view* or displays or transports any material visually portraying a minor engaged in any sexually explicit conduct is guilty of a felony." (Emphasis added). Dr. Marshall's testimony was relevant to advance the petitioner's defense that he did not possess the requisite intent and to provide an explanation for the petitioner's behavior both inside and outside the courtroom. *See* text *infra*. Critically, the petitioner was not arguing that he was incapable of formulating intent; rather, he was asserting that he did not in fact intend to commit the charged offenses. In this regard, a review of the trial transcript demonstrates beyond question that lack of intent was not just *a* defense, or even a *key* defense; it was the petitioner's *sole* defense.

Further, any argument that Dr. Marshall's testimony about ASD was irrelevant to the petitioner's defense is belied by the fact that the circuit court permitted the petitioner's father and two friends to testify about his diagnosis and its manifestations. Although this lay testimony was insufficient to ameliorate the prejudice resulting from the

_____

testimony in support of his or her defense." *Jenkins*, 195 W. Va. at 621-22, 466 S.E.2d at 472-73, Syl. Pt. 3, in part.

4

court's exclusion of expert testimony on the subject, *see* text *infra*, it demonstrates that any argument as to relevance is nothing more than an after-the-fact attempt to justify the exclusion of Dr. Marshall's crucial testimony.

Prejudice. The State has no claim of prejudice that would result from the admission of Dr. Marshall's testimony other than the vastly overused, and wholly speculative, possibility of "jury confusion." I can conceive of no reason to believe that a West Virginia jury is incapable of listening to expert testimony and then sorting out the wheat from the chaff, in consultation with one another and guided by the instructions of the court. *See*, *e.g.*, *Gentry v. Mangum*, 195 W. Va. 512, 525–26, 466 S.E.2d 171, 184–85 (1995) ("'Conventional devices' like vigorous cross-examination, careful instructions on the burden of proof, and rebuttal evidence, may be more appropriate instead of the 'wholesale exclusion' of expert testimony under Rule 702.") (citation omitted).

Compelling interest. The State does not argue that it has a compelling interest in excluding the testimony, as admission of Dr. Marshall's testimony would not in any way cause harm to victims or witnesses. Indeed, the only possible harm that could have resulted from the testimony was to the State's chance of obtaining a conviction. To this point, I reiterate this Court's pronouncement of "the universally recognized principle that

a prosecutor's duty is to obtain justice and not simply to convict." *Nicholas v. Sammons*, 178 W. Va. 631, 632, 363 S.E.2d 516, 518 (1987).[6]

Although the State argues, and the majority accepts, various rationales for the circuit court's decision to exclude Dr. Marshall's testimony, it is clear from the appendix record that the court seized on one sentence from one of the expert's reports, which stated that because of the petitioner's Asperger's Syndrome Disorder ("ASD") and Obsessive Compulsive Disorder ("OCD") he would tend to "hyper-focus on a topic he is motivated to investigate . . . *with a lack of appreciating whether something is right or wrong*[,]"[7] as indicating that the petitioner was attempting to mount a diminished capacity defense.[8] However, the petitioner never sought to advance a diminished capacity defense

---

[6] In *Nicholas*, we cited the United States Supreme Court's famous pronouncement that a prosecuting attorney

> is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.

178 W. Va. at 632, 363 S.E.2d at 518 (quoting *Berger v. United States,* 295 U.S. 78, 88 (1935)).

[7] The emphasis is that of the circuit court, not the expert.

[8] "The diminished capacity defense is available in West Virginia to permit a defendant to introduce expert testimony regarding a mental disease or defect that rendered the defendant incapable, at the time the crime was committed, of forming a mental state

through Dr. Marshall's testimony; indeed, he admitted that he knew right from wrong. As defense counsel explained, Dr. Marshall would testify not that the petitioner lacked *capacity* to form intent (to view the photos in question), but that the petitioner didn't in fact *have* such intent because his hyper-focused mission was to plumb the depths of the dark web, not to find and view pornographic images.

Defense counsel further explained that Dr. Marshall's testimony would give the jury a context for evaluating his character traits and credibility as well as "assessing his subjective perceptions of what he was doing when he engaged in research on the dark web." More specifically, Dr. Marshall would have testified that the petitioner suffers from several significant psychological conditions, with the primary one being a neurodevelopmental condition that falls on the autism spectrum, although the petitioner also has obsessive-compulsive disorder, depression, anxiety, and panic disorder. Dr. Marshall would have explained that someone with petitioner's autism diagnosis has difficulty with eye contact, which could be misconstrued as indicating deception or having something to hide, and lacks emotional expressiveness, which could be misinterpreted as indicating lack of remorse or insensitivity. Dr. Marshall would have further explained that such persons speak in a manner that is not fluid; tend to go off on a tangent; and repeat themselves,

that is an element of the crime charged." Syl. Pt. 3, in part, *State v. Joseph*, 214 W. Va. 525, 590 S.E.2d 718 (2003).

7

causing others to think they are being difficult and/or uncooperative.[9] With respect to petitioner's research on the dark web, Dr. Marshall would have explained that persons with autism think "concretely step by step, gathering the information and missing big pieces of the social puzzle and not processing the social information in the way we [persons without autism] would, which is conceptually, by just getting stuck on individual steps and leading him into places he's not going to recognized as danger like we would."[10]

Despite defense counsel's attempts to set the record straight as to what defense he intended to put before the jury, the circuit court wouldn't budge from its interpretation of that single sentence in Dr. Marshall's report,[11] pointing out that the expert had never amended or updated his initial report to excise, or otherwise clarify or explain that "right or wrong" rubric. Thus,

> [i]n this matter the trial court's analysis of the relevance of [Dr. Marshall's] expert testimony was off target from its inception.

---

[9] The petitioner exhibited all of these characteristics during his testimony at trial, resulting in several stern rebukes by the circuit court. Although I do not think these rebukes were so prejudicial, in and of themselves, as to require reversal, they perfectly illustrate the importance of Dr. Marshall's evidence. By better understanding how the petitioner interacted with the world as a result of his ASD, the jury would have better understood his core defense: that he lacked the requisite intent to commit the crimes charged.

[10] This testimony was provided by Dr. Marshall at the petitioner's sentencing hearing. Although the majority discounts its significance because it was not before the circuit court at the time the admissibility issue was argued, I believe that defense counsel adequately recounted at that time what the sum and substance of Dr. Marshall's testimony would be.

[11] "The Court continues to be of the opinion that regardless of how the [Petitioner] couches Dr. Marshall's testimony, he is attempting to assert a diminished capacity/lack of criminal responsibility defense[.]"

> In perceiving [Marshall's] testimony to be permissible only to establish a mental defect defense, *which defendant was not asserting*, the trial court employed an approach to analyzing the permissible uses of the testimony that was too narrow.

*State v. Burr [Burr II]*, 948 A.2d 627, 632 (N.J. 2008) (emphasis added).

Further, the circuit court relied on the absence of any West Virginia precedent governing admission of expert testimony[12] as to ASD, with or without the complication of OCD, either to negate a defendant's mens rea or to explain the affect and behaviors of an individual who has the condition. Although the court was correct as to the lack of West Virginia case law on the very specific issue presented in this case, admission of expert testimony as to ASD, this Court has many precedents which can, and should, guide our resolution of the issue presented here. *See*, *e.g.*, *State v. Stewart*, 228 W. Va. 406, 409, 719 S.E.2d 876, 879 (2011) ("Based on well-established West Virginia precedent, the defendant was entitled to present evidence of Battered Woman's Syndrome and evidence of abuse through eyewitnesses and expert witnesses. *See, e.g.,* Syllabus Point 4, *State v. Harden,* 223 W.Va. 796, 679 S.E.2d 628 (2009) (in cases not involving self-defense, evidence of abuse is 'relevant and may negate or tend to negate a necessary element of the offense(s) charged, such as malice or intent.'")); *State v. Ferguson*, 222 W. Va. 73, 76, 662 S.E.2d 515, 518 (2008) (expert testified that because defendant had schizo affective

---

[12] The court did allow some testimony about the petitioner's conditions, and how they bore on his affect and his behaviors, from the petitioner's father and two friends. *See* text *infra*.

9

disorder, and when he saw an individual he believed had stolen from him, "I think his thinking was impaired at the time and that would drastically affect his intent. I don't think he had the intent to kill. I think he had intent to go find out what happened to his stuff."); *State v. Lockhart*, 208 W. Va. 622, 630, 632, 542 S.E.2d 443, 451, 453 (2000), where we noted that Dissociative Identity Disorder ("DID") is a "complex mental disorder," and held that in view of the general scientific recognition of the diagnosis of DID and the fact that other courts have allowed expert testimony as to its existence and its applicability in a specific case, expert testimony concerning DID may be admissible in West Virginia on a case-by-case basis.); Syl. Pt. 2, *State v. McCoy*, 179 W. Va. 223, 224, 366 S.E.2d 731, 732 (1988) ("Qualified expert testimony regarding rape trauma syndrome is relevant and admissible in a prosecution for rape where the defense is consent. The expert may testify that the alleged victim exhibits behavior consistent with rape trauma syndrome, but the expert may not give an opinion, expressly or implicitly, as to whether or not the alleged victim was raped").

Although court in other jurisdictions have been presented with the issue of admissibility of expert testimony concerning a defendant's ASD, the circuit court summarily disregarded them as "unpersuasive and not applicable to the present case." I disagree on both counts, finding the cases to be both persuasive and highly relevant. In *State v. Burr [Burr I]*, 921 A.2d 1135 (N.J. Super. Ct. App. Div. 2007), *aff'd as modified by Burr II*, 948 A.2d 627 (2008), the trial court had excluded expert testimony concerning

ASD on the ground that it did not establish diminished capacity, notwithstanding defense counsel's explanation "that the defense was not seeking to offer evidence of the disorder to show that defendant committed the alleged acts but did not understand that his conduct was wrong, but rather to show that defendant's ability to make certain social judgments is impaired." *Id*. at 1142. On appeal, the Superior Court of New Jersey reversed, finding that

> Clearly then, [the expert's] testimony would have given jurors a better understanding of defendant's behavior, which could have effectively negated the inference that defendant had the improper motive of seeking sexual gratification by having children sit on his lap. The trial would have been a more fair and complete adversarial process if, in evaluating the evidence and the inferences urged by the State, jurors were aware that defendant's mental disability prevents him from viewing the world as others do in terms of acceptable social interactions.

*Id*. at 1150.[13] On appeal, the Supreme Court of New Jersey affirmed, holding that "[i]n our view, the evidentiary ruling on the Asperger's Disorder testimony denied defendant access to evidence that was *relevant and material to his explanation of himself and his conduct*." *Burr II*, 948 A.2d at 629 (emphasis supplied). Noting that the New Jersey Evidence Rules "broadly admit 'all' relevant evidence, unless the evidence is otherwise excluded," *id*. at 631 (citation omitted), the court concluded that evidence as to the appellant's ASD was "'relevant to prove that the defendant did not have a state of mind which is an element of

---

[13] The appellant also argued "that the trial court's refusal to allow Asperger's evidence deprived him of a fair trial by preventing him from testifying on his own behalf due to concerns that the jury would misconstrue his odd appearance and behavior and therefore find him to be not credible." *Burr I*, *id*. at 1150. The court did not base its ruling on this argument, finding that it wasn't fairly raised because the appellant did not claim that he would have testified if the expert's testimony had been admitted.

the offense.'" *Id*. at 632. The court cited multiple precedents for the broad proposition that "mental defect evidence is relevant when asserted to prove or disprove an element of a crime or to advance a defense." *Id*. Finally, the court concluded that

> [b]eyond offering an alternative explanation for defendant's conduct, the barred testimony would have enhanced the presentation of defendant's defense to the charges against him in ways that defy specific enumeration. The evidence would have educated the jury about oddities in behavior that defendant might exhibit in court or were described in the testimony of witnesses. The testimony also might have enabled the jury to view the facts with greater consideration given to defendant's version of his interactions with the children.

*Id*. at 633.

In *People v. Larsen*, 205 Cal. Rptr.3d 762 (Cal. Ct. App. 2012), the issue on appeal was whether the trial court had denied the defendant his right to put on a defense by refusing to give a "pinpoint instruction" to the effect that his ASD could be considered by the jury "for the limited purpose of deciding whether, at the time of the charged crime, the defendant acted . . . with the intent or mental state required for that crime." *Id*. at 773-74. The appellate court concluded that the trial court erred in refusing the instruction, because his expert's "testimony on the effects of defendant's [ASD] was both probative and admissible on the issue of whether defendant actually formed and expressed the requisite intent to procure Jane Doe's murder."[14] *Id*. at 777. Finally, and of specific relevance to the

---

[14] The defendant claimed that his plans for the murder "were part of an elaborate fantasy within the confines of a role-playing game." *Id*. at 774.

case at bar, the court found that the trial court's categorization of the defendant's ASD defense as bearing solely on mental *capacity* was "off the mark" because the evidence that he suffered from ADS, "and its manifested symptoms, directly and materially reflected on his claim that he did not actually intend to solicit the victim's murder, but instead was engaged in some form of game-playing brought on by his mental disorder." *Id*.

Finally, in *State v. Boyd*, 143 S.W.3d 36 (Mo. Ct. App. 2004), the trial court excluded expert testimony concerning ASD on the ground that it didn't bear on the defendant's lack of capacity to commit a crime. As was the situation in the instant case, defense counsel argued – to no avail – that lack of capacity wasn't his defense. On appeal, the Missouri Court of Appeals found that exclusion of the evidence was error; the court reversed and remanded for a new trial, noting that "[t]he denial of the opportunity to present relevant and competent evidence negating an essential element of the state's case may, in some cases, constitute a denial of due process." *Id*. at 40.

Even setting aside our *Guthrie* test, 205 W. Va. at 330, 528 S.E.2d at 87, and the relevant precedents from other jurisdictions discussed *supra*, all of which compel the conclusion that the circuit court erred in excluding the testimony of the petitioner's expert witness, that conclusion would be "consistent with this Court's prior applications of the Rules of Evidence regarding admissibility of expert testimony and the liberal thrust of those rules." *State ex rel. Jones v. Recht*, 221 W. Va. 380, 386, 655 S.E.2d 126, 132 (2007); *see*

*also Gentry*, 195 W. Va. at 525, 466 S.E.2d at 184 (the Rules of Evidence are liberal and a trial court should "err on the side of admissibility."). We have held that the core concern of West Virginia Rule of Evidence 702[15] is whether an expert's "'specialized knowledge will *assist the trier of fact* to understand the evidence or to determine a fact in issue[.]'" Syl. Pt. 1, in part, *Cargill v. Balloon Works, Inc.*, 185 W. Va. 142, 143, 405 S.E.2d 642, 643 (1991) (citation omitted and emphasis added); *see also Tanner v. Rite Aid of West Virginia, Inc.,* 194 W.Va. 643, 654 n.17, 461 S.E.2d 149, 160 n.17 (1995) ("Helpfulness to the jury . . . is the touchstone of Rule 702"). At its essence, Rule 702 "'is one of admissibility rather than exclusion.'" *In re Flood Litig. Coal River Watershed*, 222 W. Va. 574, 581, 668 S.E.2d 203, 210 (2008) (quoting *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991)); *see also San Francisco v. Wendy's Int'l, Inc.*, 221 W. Va. 734, 741, 656 S.E.2d 485, 492 (2007) ("The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact.") (quoting *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3rd Cir.1997)).

In the instant case, it is beyond dispute that the evidence of Dr. Marshall would have been helpful to the jury in making the critical determination of whether the petitioner's intent was to find and look at pornographic images or, as he contended, to see

---

[15] West Virginia Rule of Evidence 702(a) provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

just how dark the "dark web" really is. Lack of intent was the entirety of the petitioner's defense, and in the absence of Dr. Marshall's testimony there was nothing to support what may have seemed, to a lay jury, to be a fanciful explanation of just what the petitioner was doing at his computer. In this regard, although the State asserts that the exclusion of Dr. Marshall's testimony did not leave the petitioner without a defense because his father and two friends testified as to the oddities and quirks in his behavior resulting from ASD, I reject any argument that this is sufficient to establish harmless error. As any trial lawyer knows, there is a significant difference between having an accused's relatives and friends testify about his or her medical condition and having a medical professional give that testimony; an expert has what one court termed an "aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Elsayed Mukhtar v. Calif. State Univ., Hayward*, 299 F.3d 1053, 1063-64 (2002), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (2020). Further, as set forth in the *Burr, Larsen* and *Boyd* cases, *supra*, an expert on ASD can explain the condition in depth and how a "defendant's mental disability prevents him from viewing the world as others do in terms of acceptable social interactions." *Burr II*, 948 A.2d at 631. Lay testimony, which is generally confined to how a particular defendant appears "weird" to others, simply does not compare to expert testimony which helps a jury "to understand[] Asperger's syndrome itself and to whether [the defendant] has it." *Boyd*, 143 S.W.3d at 45.

Further, the evidence would have been helpful to the jury in assessing the petitioner's credibility because, as the expert would have testified, his ASD would (and most definitely did) make him a terrible witness – drawing multiple admonishments from the circuit court and even a threat to strike the entirety of his testimony. As stated *supra*, I agree with the majority that in issuing these admonishments, the circuit court did not cross the line of "unduly influencing jurors in the discharge of their duty as triers of the facts." Syl. Pt. 4, in part, *State v. Rogers*, 215 W. Va. 499, 600 S.E.2d 211 (2004); *see also State v. Wotring,* 167 W.Va. 104, 115, 279 S.E.2d 182, 190 (1981). However, the admonishments, coupled with the petitioner's testimony, which could most kindly described as discursive, were extremely prejudicial in the absence of expert testimony as to how the petitioner's ASD-related mannerisms could affect his testimony and thus "surprise or inexplicably alienate the jury." *Burr II*, 948 A.2d at 633.

Finally, in discussing the petitioner's assignment of error concerning the circuit court's admonishments, the majority has made the sweeping pronouncement, elevated to a syllabus point, that "[t]he trial court has an obligation to all parties to ensure that the trial is conducted in a fair manner. *This obligation includes a duty to supervise the direct and cross-examination of each party's witnesses*." Not surprisingly, the majority cites no authority for this proposition, as it is wholly divorced from the realities of trial practice. At trial, decisions as to what witnesses to call, how best to elicit information from them, and/or how best to discredit their testimony, are matters of strategy for the advocates,

16

not for the trial judge. The judge's role is to rule on motions, objections, and issues of law, and – in limited circumstances – to pose clarifying questions. None of this constitutes "supervision" of direct and cross-examination, and I fear that a literal reading of the majority's new syllabus point will invite judicial interference in the presentation of evidence, thus crossing a line this Court has firmly established:

> The trial judge in a criminal trial must consistently be aware that he occupies a unique position in the minds of the jurors and is capable, because of his position, of unduly influencing jurors in the discharge of their duty as triers of the facts. This Court has consistently required trial judges not to intimate an opinion on any fact in issue in any manner. In criminal cases, we have frequently held that conduct of the trial judge which indicates his opinion on any material matter will result in a guilty verdict being set aside and a new trial awarded.

*Rogers*, 215 W. Va. at 504-05, 600 S.E.2d at 216-17 (citations omitted).[16]

---

[16] This venerable doctrine dates back into the nineteenth century. In *State v. Staley*, 45 W. Va. 792, 32 S.E. 198 (1899), we wrote that "[t]he courts have ever been exceedingly careful of the province of the jury in the trial of cases." *Id*. at __, 32 S.E.2d at 202. We further noted the existence of numerous cases which

> evince a jealous care to watch over and protect the legitimate powers of the jury. They show that the court must be very careful not to overstep the line which separates law from fact. They establish the doctrine that, when the evidence is parol, any opinion as to the weight, effect, or sufficiency of the evidence submitted to the jury, any assumption of a fact as proven, or even an intimation that written evidence states matters which it does not state, will be an invasion of the province of the jury.

*Id*.

For all of these reasons, I respectfully dissent. I am authorized to state that Chief Justice Hutchison joins in this dissenting opinion.