STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**
**March 16, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Keith M. Molineaux,**
**Petitioner Below, Petitioner**

**vs) No. 18-0898** (McDowell County 04-C-221-M)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Keith M. Molineaux, by counsel Michael E. Froble, appeals the September 28, 2018, order of the Circuit Court of McDowell County denying his instant petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex, by counsel Shannon Kiser, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 9, 2001, John and Kimmie Stepp were murdered in their home in Skygusty, West Virginia. The following day, Thomas King entered the North Fork Police Department to confess to his involvement in these murders. Mr. King informed officers that he, Brandon Britto, James Jones, and petitioner drove to the Stepp household to purchase marijuana. Mr. King recounted that petitioner was dissatisfied with the quality of Mr. Stepp's marijuana, so Mr. Stepp offered to obtain better marijuana. Upon hearing this offer, petitioner asked Mr. Stepp if he had money for better marijuana. Mr. King stated that the situation escalated, and, ultimately, petitioner placed a gun to Mr. Stepp's head, demanded Mr. Stepp give him money, and, when Mr. Stepp denied having money, ordered Mr. and Mrs. Stepp to the rear of their home.

1

Petitioner directed Mr. Britto to come with him to the rear of the home, and he instructed Mr. King and Mr. Jones to search the home. Mr. King stated that once petitioner, Mr. Britto, and the Stepps were in the rear of the home, Mr. King, who was toward the front of the home, heard a gunshot. Hearing the gunshot prompted Mr. King to flee from the Stepp residence. As Mr. King ran to the car, he heard a second gunshot. Mr. King entered the car in which the four men arrived, and, shortly thereafter, the three other men joined him. The four men then left the scene. According to Mr. King, while in the car, petitioner admitted to shooting and killing both Stepps.

Petitioner was subsequently indicted for the first-degree murder of John Stepp, the first-degree murder of Kimmie Stepp, first-degree robbery, burglary, conspiracy to commit robbery, conspiracy to commit murder, and conspiracy to commit burglary. Petitioner's trial on these charges began on April 22, 2002. On April 25, 2002, the jury found petitioner guilty of each first-degree murder charge, robbery, conspiracy to commit robbery, burglary, and conspiracy to commit burglary. Petitioner was acquitted of conspiracy to commit murder.

On May 16, 2002, petitioner was sentenced in the Circuit Court of McDowell County to life without mercy for each of his first-degree murder convictions. The life sentences were to run consecutively. The circuit court noted that these convictions were obtained under the felony murder rule; accordingly, pursuant to *State v. Williams*, 172 W. Va. 295, 305 S.E.2d 251 (1983), petitioner was not sentenced for the underlying robbery or burglary convictions. Petitioner appealed his conviction to the West Virginia Supreme Court of Appeals, but that appeal was refused by order entered on January 27, 2004. Petitioner thereafter appealed to the Supreme Court of the United States, but the writ of certiorari was denied on June 14, 2004.

Petitioner initially filed a petition for habeas corpus relief in the circuit court in 2004. The circuit court denied the petition without the appointment of counsel or an evidentiary hearing. On December 28, 2005, petitioner appealed the denial of his habeas petition to this Court. Pursuant to this Court's prior order in Case No. 33157, petitioner's petition for a writ of habeas corpus was granted returnable below for appointment of counsel and the holding of an evidentiary hearing.

Petitioner thereafter filed multiple original jurisdiction petitions for mandamus and habeas relief with this Court, all of which were denied. Eventually, petitioner filed the instant petition for a writ of habeas corpus in the circuit court in which he asserted twenty-seven grounds for relief.[1] The circuit court set the matter for an omnibus hearing split over three days:

---

[1]Petitioner's twenty-seven grounds for habeas relief are: (1) ineffective assistance of counsel based upon counsel's failure to call witnesses during the suppression hearing; (2) ineffective assistance of counsel based upon counsel's failure to provide a time notice to co-defendants to organize a "show up" in front of the jury; (3) ineffective assistance of counsel based upon counsel's failure to investigate and/or interview additional defense witnesses; (4) ineffective assistance of counsel based upon counsel's failure to call the victims' minor daughter as a witness during trial; (5) ineffective assistance of counsel based upon counsel's failure to

(continued . . . )

2

March 26, 2018; April 3, 2018; and June 18, 2018. Over the three days set aside for the omnibus evidentiary hearing, petitioner called numerous witnesses in an attempt to prove his case.

Petitioner now appeals the circuit court's September 28, 2018, order denying the instant habeas petition. This Court reviews a circuit court order denying a habeas petition under the following standards:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and

object to leading questions asked by the prosecutor during co-defendant King's direct examination during the State's case-in-chief; (6) ineffective assistance of counsel based upon counsel's failure to move for a change of venue; (7) ineffective assistance of counsel based upon counsel's failure to object to statements obtained in violation of Petitioner's Fifth Amendment rights; (8) ineffective assistance of counsel based upon counsel's failure to object to the trial court's robbery instruction to the jury; (9) ineffective assistance of counsel based upon counsel's failure to object to the trial court's failure to instruct the jury that the arguments of counsel are not to be considered evidence; (10) ineffective assistance of counsel based upon appellate counsel's failure to challenge the trial court's failure to instruct the jury that the arguments of counsel are not to be considered evidence; (11) ineffective assistance of counsel based upon appellate counsel's failure to challenge the trial court's failure to instruct the jury that the arguments of counsel are not to be considered evidence; (12) ineffective assistance of counsel based upon counsel's failure to seek a psychological evaluation of Petitioner to determine competency and criminal responsibility; (13) ineffective assistance of counsel based upon counsel's failure to question potential jurors regarding prejudice and bias; (14) ineffective assistance of counsel based upon counsel's failure to object to the hearsay testimony of Officer Jones; (15) ineffective assistance of counsel based upon counsel's failure to investigate forensic evidence; (16) ineffective assistance of counsel based upon counsel's failure to call Sergeant J. R. Pauley as a witness during the suppression hearing; (17) ineffective assistance of counsel based upon counsel's failure to rebut evidence of Petitioner's confession; (18) ineffective assistance of counsel based upon counsel's failure to develop mitigating evidence; (19) ineffective assistance of counsel based upon counsel's failure to object to hearsay; (20) plain error by virtue of the trial court's incorrect jury instruction on robbery; (21) prosecutorial misconduct based upon the prosecutor's failure to establish chain of custody information relating to the murder weapon, clothes, bandanas and other evidence collected during the investigation; (22) insufficiency of the indictment based upon the State's failure to include the item taken; (23) actual innocence; (24) a due process violation based upon differing case numbers being used during petitioner's criminal proceedings; (25) a violation of the prompt presentment rule; (26) a violation of petitioner's Fifth Amendment right against self-incrimination; and (27) a violation of the Confrontation Clause predicated upon the witnesses that trial counsel should have sought to include as witnesses at trial.

3

questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

. . . .

"'A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.' Syllabus Point 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973)." Syl. Pt. 2, *White v. Haines*, 215 W.Va. 698, 601 S.E.2d 18 (2004).

Syl. Pts. 1 & 3, *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016). Petitioner contends that he was denied effective assistance of counsel because his counsel failed to call any witnesses in his defense, did not allow the petitioner to testify in his own defense, and failed to investigate forensic evidence. Petitioner argues that some of the most critical evidence in the trial came from the testimony of co-defendant Thomas King, who placed the sole responsibility of the murders of John and Kimmie Stepp on him. The petitioner asserts that Mr. King's statement required effective counsel to persuade the jury that the allegations were false. Instead, petitioner was persuaded not to testify at trial, and he was not given the opportunity to deny his involvement in the shooting or a chance to explain the history between himself, the co-defendants, and the victims.

Petitioner also argues that his trial court counsel failed to call his father, Kiko Molineaux, and his girlfriend during his suppression hearing to testify that petitioner asked for an attorney on two separate occasions while being questioned by the investigating officers. Petitioner argues that his trial counsel failed to call these witnesses because his father wore his hair in dreadlocks. Thus, petitioner contends that the decision to forego calling his father resulted not from strategy, but racial stereotyping. Petitioner also contends that trial counsel erred in failing to offer his own testimony. Petitioner argues that these failures prejudiced him because he was not given the opportunity to deny or explain his involvement in the shooting and that any additional evidence to refute Mr. King's account was critical for the jury to evaluate his credibility.[2] Petitioner further argues that the trial court did not have all of the evidence because his counsel chose not to

---

[2]The circuit court noted that petitioner's first-degree murder convictions were predicated on the felony murder rule. Therefore, evidence concerning which co-defendant exited the Stepp home last, and then, inferentially, which pulled the trigger, is immaterial. The deaths occurred during the commission of an enumerated felony, irrespective of who pulled the trigger, is sufficient to sustain a felony murder first-degree murder conviction. *See* W. Va. Code § 61-2-1. ("Murder . . . in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance. . . is murder of the first degree.").

question the one person who could testify that petitioner did not actually kill the Stepps, the couple's six-year-old daughter who witnessed the murders.

Petitioner asserts that his trial counsel was ineffective when he failed to investigate and require the forensic testing of the petitioner's clothing that was recovered by the investigating officers. Petitioner contends that because the shooting was done at close range, there would have been blood on his clothing if he were the shooter. By not securing the evidence and demanding testing of the same, his trial counsel removed the opportunity to contradict the claim that petitioner was indeed the shooter. Petitioner believes that the jury would have heard testimony from the West Virginia State Crime Lab that the Petitioner had no blood or gunshot residue on his clothing worn on the night of the shooting.

In West Virginia, claims of ineffective assistance of counsel are governed by the two-prong standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id*. at Syl. Pt. 6.

"When assessing whether counsel's performance was deficient, we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]'" *Id.* at 15, 459 S.E.2d at 126 (citation omitted). Further, to demonstrate prejudice, "a defendant must prove there is a 'reasonable probability' that, absent the errors, the jury would have reached a different result." *Id*.

As a result, petitioner "bears a difficult burden because constitutionally accepted performance is not defined narrowly and encompasses a 'wide range'" *Id*. Indeed,

> [t]he test of ineffectiveness has little or nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

*Id*. Consequently, "the cases in which a defendant may prevail on the ground of ineffective

assistance of counsel are few and far between one another." *Id*.

Finally,

> [i]n deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington* . . . and *State v. Miller*, . . . but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.

Syl. Pt. 5, *State ex rel. Daniel v. Legursky,* 195 W. Va. 314, 465 S.E.2d 416 (1995).

The circuit court concluded that the evidence adduced at the omnibus hearing does not support petitioner's asserted ground for relief for ineffective assistance of counsel. It was found that petitioner's father did not testify that he heard his son ask for an attorney prior to or during petitioner's questioning by the police, and no testimony from the girlfriend was adduced. The officers present during petitioner's arrest and subsequent questioning testified that petitioner did not ask for an attorney.[3] In fact, petitioner completed a form waiving his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966). The circuit court found that petitioner's trial counsel did not render deficient representation given that there is no evidence that petitioner's father or girlfriend heard petitioner invoke his right to counsel prior to or at the time of police questioning. The circuit court also held that petitioner has failed to demonstrate that counsel's failure to force a small child to testify regarding her parents' brutal murders amounts to deficient representation rather than sound trial strategy.

Petitioner listed an ineffective assistance of counsel claim predicated on counsel's failure to object to the robbery jury instruction given. He seeks review of the instruction under the plain error doctrine given counsel's failure to object to the instruction. Petitioner acknowledges that the trial court's robbery instruction was taken directly from West Virginia Code § 61-2-12, but he argues that the statute only states the means and manner by which a robbery is committed, differentiates between the two classes of robbery, and prescribes a penalty for each class. The specific elements of robbery are outlined in case law. The trial court's instruction did not instruct the jury that robbery included the unlawful taking of goods or money from the person, and the intent to permanently deprive the owner or their property. Thus, petitioner asserts that the jury was not instructed on the essential elements of robbery or attempted robbery.

Under the plain error doctrine, a court may, "in the interest of justice, notice plain error in

---

[3]At the time of petitioner's arrest, he was given his *Miranda* warnings. Following his arrest, he was transported to the Bluefield Police Department and again given his *Miranda* warnings. In fact, petitioner initialed and signed a waiver of rights form, which memorialized these warnings, his understanding of them, and his waiver. During his interview with Trooper Crowder, the petitioner made certain admissions. Petitioner now contends that Trooper Crowder did not specifically inform him of his rights under *Miranda.*

the giving or refusal to give any instruction, whether or not it has been made the subject of objection." W. Va. R. Crim. P. 30; *see also* "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). But the plain error doctrine "is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result." Syl. Pt. 2, in part, *State v. Rogers*, 215 W. Va. 499, 600 S.E.2d 211 (2004). Also, plain error is not typically recognized in the giving of an erroneous instruction, "even of constitutional magnitude, where the giving of the erroneous instruction did not substantially impair the truth-finding function of the trial court." *State v. Hutchinson*, 176 W. Va. 172, 342 S.E. 2d 138 (1986).

The circuit court found that the truth-finding function of the trial court was not impaired as it relates to petitioner's robbery conviction because it does not rise to the level of plain error. The circuit court noted that petitioner was also convicted of burglary, which is also a predicate for felony murder. Petitioner does not challenge the instruction given on burglary. Also, at petitioner's sentencing, the trial court recounted that the jury convicted him of both robbery and burglary and stated that, because petitioner's felony murder convictions could be predicated on either his burglary or robbery convictions, it did not sentence him for either burglary or robbery. The circuit court determined that even if this Court were to assume error with respect to the robbery instruction, it would still stand as a result of petitioner's burglary conviction. The circuit court found that any such error is harmless error because Petitioner cannot show that he is imprisoned under a void sentence.[4] *See* W. Va. Code § 53-4A-1.

Secondly, in support of his petition for writ of habeas corpus, petitioner contends that the State committed prosecutorial misconduct because it did not provide chain of custody information relating to the murder weapon, clothes, bandanas, and all other evidence collected during the investigation, despite being ordered to provide such evidence. The circuit court found that the petitioner fails to articulate how chain of custody information would be exculpatory or useable as impeachment evidence. Petitioner also fails to substantiate that any evidence was suppressed by the State. The circuit court found that petitioner fails to explain how any alleged failures prejudiced him at trial, particularly given that petitioner admits to being at the scene of the murders.

In further support of his prosecutorial misconduct claim, petitioner asserts that the prosecutor presented false testimony regarding his confession to Trooper Crowder. On the final day of the omnibus hearing, petitioner called Trooper Crowder who testified that he was positive that petitioner confessed to the murders. He stated that petitioner knew and understood his rights at the time of his interview and that he never invoked his right to remain silent. Trooper Crowder

---

[4] "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, *State v. Blair*, 158 W. Va. 647, 214 S.E.2d 330 (1975).

also noted that petitioner never requested an attorney. Petitioner contends that the fact that other officers stated that petitioner did not confess renders Trooper Crowder's claims concerning a confession not credible. Petitioner also highlights the length of time that passed before Trooper Crowder's notes of the confession were ultimately provided by the State.

> In order to obtain a new trial on a claim that a prosecutor presented false testimony at trial, a defendant must demonstrate that (1) the prosecutor presented false testimony; (2) the prosecutor knew or should have known the testimony was false; and (3) the false testimony had a material effect on the jury verdict."

Syl. Pt. 2, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009). The circuit court found that petitioner has not satisfied his burden under *Franklin.* The fact that Petitioner did not confess to all investigating officers does little to discredit Trooper Crowder's testimony concerning a confession. Likewise, the length of time that passed before the notes were produced fails to establish that the testimony concerning the confession is false. The circuit court also found that petitioner presented no evidence showing that the prosecutor knew or should have known any such testimony was false. The circuit court found that petitioner's statement to Trooper Crowder was not obtained in violation of the Fifth Amendment. Moreover, counsel was not ineffective in this regard as the issue was addressed at a suppression hearing. Accordingly, the circuit court held that the petitioner has failed to establish that the prosecutor committed misconduct in eliciting testimony regarding his confession and that petitioner failed to satisfy either prong of *Strickland*.

As the circuit court's order includes detailed and well-reasoned findings and conclusions as to the specific assignments of error now raised by petitioner on appeal and because we find no clear error or abuse of discretion in the circuit court's order or the record before us, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignments of error raised on appeal and direct the Clerk to attach a copy of the circuit court's September 28, 2018, "Final Order" to this memorandum decision.

For the foregoing reasons, we affirm the circuit court's September 28, 2018, denial of petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED:** March 16, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

18-0898

IN THE CIRCUIT COURT OF MCDOWELL COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.
KEITH MARTIN MOLINEAUX,

Petitioner,

Case No. 04-221 -M

THOMAS MCBRIDE,
Warden, Mt. Olive Correctional Complex,

Respondent.

## ORDER DENYING PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS AND PETITIONER'S MOTION FOR PREPARATION OF TRANSCRIPTS

This matter comes before the Court following petitioner's Petition for a Writ of Habeas Corpus.] The parties appeared for an omnibus evidentiary hearing on March 26, 2018, April 23, 2018, and June 18, 2018. The Court has fully considered petitioner's petition, all amended and supplemental filings, respondent's responses. and lhe evidence and testimony adduced during the omnibus hearing; accordingly, the Court finds and orders follows:

## FACTS

On April 9, 2001, John and Kimmie Stepp were murdered in their home in Skygusty, West Virginia. The following day, Thomas King entered the North Fork Police Deparünenl to confess to his involvement in these murders. Mr. King informed officers that he, Brandon Brillo, James Jones. and petitioner drove to the Stepp household to

---

[1]Petitioner has also filed amended and supplemental petitions in support of his request för habeas relief.

purchase marijuana. Mr. King recounted that petitioner was dissatisfied with the quality of Mr. Stepp's marijuana, so Mr. Stepp offered to obtain better marijuana. Upon hearing

1

this offer, petitioner asked Stepp if he had money for better marijuana. Mr. King stated that the situation escalated, and, ultimately, petitioner placed a gun to Mr. Stepp's head, demanded Mr. Stepp give him money, and, when Mr. Stepp denied having money. ordered Mr. and Mrs. Stepp 10 the rear of their home.

Petitioner directed Mr. Britto to come with him to the rear of lhe home, and he instructed Mr. King and Mr. Jones {0 search the home. Mr- King staled that. once petitioner, Mr. Britto, and the Stepps were in the rear of the home. Mr. King, who was toward the front of {he home, heard a gunshot. Hearing the gunshot prompted Mr. King to flee from the Stepp residence. As Mr. King ran to the cars he heard a second gunshot.

Mr. King entered the car in which the four men arrived, and, shortly thereafter. the three other men joined him. The four men then left the scene. According to Mr. King. while in the car, petitioner admitted to shooting and killing both Stepps.

Petitioner was subsequently indicted for the first-degree murder of John Stepp. the first-degree murder of Kimmie first-degree robbery, burglary, conspiracy to commit robbery, conspiracy to commit murder, and conspiracy to commit burglary. Petitioner's bial on these charges began on April 22, 2002. On April 25, 2002, the jury found petitioner guilty ofeach first-degree murder charge, robbery, conspiracy to commit robbery, burglary, and conspiracy to commit burglary- Petitioner was acquitted of . conspiracy to commit murder.

On May 16, 2002, petitioner was sentenced. The trial court sentenced petitioner to life without mercy for each first-degree murder conviction, circuit court noted that these convictions were obtained tmder the felony murder rule; accordingly, pursuant to State v. Williams, 172 W.Va. 295, 305 S.E.2d 251 (1983), petitioner was not sentenced for the underlying robbery or burglary convictions? Further finding that there was only one agreement, the circuit court found that State Johnson, 179. W.Va. 619, 371 S.E.2d.

2

340 (1988), precluded sentencing petitioner for the two separate conspiracy convictions.

[3] Finally, the circuit court ordered that petitioner's two life sentences run consecutively.

Petitioner thereafter initiated the instant petition for a writ of habeas corpus, in which he asserts numerous grounds for relief.[4] Each of petitioner's asserted grounds, as well as a more detailed recitation of relevant facts, is addressed in turn.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed,2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

syl. Pt. 5, state Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995).

---

[2] "Double jeopardy prohibits an accused charged with felony-murder, as defined by W.Va. Code 61-2-1 . . . from being separately tried or punished for both murder and the underlying enumerated felony." Williams, 172 W.Va. at 299, 305 S.E.2d at 255, Syl.

[3] "The double jeopardy clause of the Fifth Amendment prohibits the prosecution of a single conspiracy as two or more conspiracies under a general conspiracy statute merely because two separate substantive crimes have been committed." Johnson, 179 W.Va. at 622, 3n S.E.2d at 343, syl. m. 7.

[4] Petitioner filed a direct appeal with the Supreme Court of Appeals of West Virginia prior to initiating his habeas proceeding. His appeal was refused, however.

In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same lime refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. .

Id. at Syl. Pt. 6.

3

"When assessing whether counsel's performance was deficient, we •must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.J" rd. at 15, 459 S.E.2d at 126 (citation omitted). Further, to demonstrate prejudice; "a defendant must prove there is a 'reasonable probability' that, absent the errors, the jury would have reached a different result." Id. (citation omitted).

As a result, petitioner "bears a difficult burden because constitutionally accepted performance is not defined narrowly and encompasses a 'wide range.'" Id Indeed,

> [t]he test of ineffectiveness has little or nothing to do with what the best lawyers would have done. Not is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at •the time, in fact, worked adequately.

Id Consequently, "the cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between one another." Id

> Finaliy,

> [i]n deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive standard of Strickland v. Washington . . . and State v. Miller, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.

syl. Pt. 5, stale ex rel. Daniel v. Leg-ursky, 195 W.Va. 314, 465 S.E.2d 416 (1995).

It is against this backdrop that this Court examines each of petitioner's claims of ineffective assistance of counsel,

Failure to Call Witnesses During Suppression Healing

Petitioner argues that his trial counsel failed to call petitioner's father, Kiko Molineaux, and girlfriend during his suppression hearing to testify that petitioner asked for an attorney on two separate occasions while being questioned by the investigating officers. Petitioner argues that trial counsel failed to call these witnesses because

4

petitioner's father wore his hair in dreadlocks. Thus, petitioner contends that trial counsel's decision to forgo calling his father resulted not from strategy, but was due to racial stereotyping and the belief that the court would not judge his father credibly on account of his dreadlocks.

Petitioner also contends that trial counsel erred in failing to offer his own testimony on the issue of the number of times he asked for an attorney and invoked his right to remain silent.

Petitioner argues that these failures prejudiced him because the trial court did not have all of the evidence concerning his requests for an attorney at the suppression hearing.

The evidence adduced at petitioner's omnibus evidentiary hearing does not support this asserted ground for relief. Petitioner's father did not testify that he heard his son ask for an attorney prior to or•during petitioner's questioning by the police, and no testimony from the girlfriend was adduced. The officers present during petitioner's arrest and subsequent questioning; on the other hand, testified unequivocally that petitioner did not ask for an attorney. Indeed, prior to questioning by the investigating officers, petitioner completed a form waiving his rights undet Miranda v. Arizona, 384 D.S. 436 (1966). [5] Accordingly, we find that petitioner's trial counsel did not render deficient representation given that there is no evidence that petitioner's father or girlfriend heard petitioner invoke his right to counsel prior to or at the time of police questioning.[6]

---

[5]Miranda held that "the prosecution may not use statements. whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it

5

demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."

'This Court also notes that petitioner's claim that his father overheard him request an attorney was first brought to his üial counsel's attention on the day of trial. At sentencing, trial col.msel Stephen Paesani informed the Court:

> On the day of trial, I was approached by my client's father, Kiko Molineaux, and was advised that he had been present and overheard comments made by [petitioner] at the time of his arrest, comments to the effect, staements that I need a laWyer. That — 1 also learned on the day of trial that those same statements were overheard by his — by his companion, Stacy Gaparity (phonetically). And. unfortunately, I only became aware of those statements on the day of trial.

The trial court stated,

> Okay. Well, we had a suppression hearing and your client could have testified at the suppression hearing and he chose not to testify. . . He would haye known — I'm talking about [petitioner], the defendant — whether he asked for an attomey at that time or not, and he could have testified at that time, but he chose not to, for whatever reason, and that was his right to do so.

> Secondly, his father was present at the suppression hearing. . . Mr. Molineaux, Sr. [Kiko], could have told you about that information during the suppression hearing and he chose not to.

These and other factors led the trial court to conclude that its ruling at the suppression hearing would not have changed. Thus, this evidence compels the conclusion that trial counsel's representation was not ineffective for failing to call these witnesses at

(continued . . . )

Failure io Provide Timely Notice to Codefendants' Counsel of "Show Up"

Petitioner argues that his trial counsel failed to give timely notice to his codefendants' counsel that he wanted *hem to "show up" in front of the jury to demonstrate that petitioner was tallest among them. Petitioner argues that his codefendants' appearance and height was relevant because one witness described the last figure seen running from the crime scene as short and thin and wearing a gray hooded

6

sweatshirt. Petitioner asserts that he is the tallest of the codefendants, however. Thus, had counsel provided timely notice, the jury would have been shown that the short, thin man identified by witnesses as the last one running to the car was likely codefendant Mr. Britto. [7]

This claim fails due to petitioner's failure to demonstrate that the outcome of his trial would have been different. Importantly, the jury heard evidence regarding the relative height of the four codefendants. Mr. King testified that petitioner was the tallest

---

the suppression hearing because the trial court's ruling would have remained the same and because trial counsel was unaware of these alleged claims. See Legursky, ] 95 W.Va. at 327, 465 S.E.2d al 429 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on infomed strategic choices made by the defendant and on information supplied by the defendant.") (citing Slrickland v . Washington, 466 U.S. 668, 691 (1984)).

[7]Petitioner also argues that the failure to present the "show up" violated his Sixth Amendment right to confront his accusers.

"In all criminal prosecutions. the accused shall be confronted with the witnesses against him." Syl. Pt. 1 . in part, Stale v. James Edward S. , 184 W.Va. 408, 400 S.E.2d 843 (1990), overruled on other grounds by State v. Mechling, 219 W.Va. 366, 633 S.E.2d 311 (2006). Simply put, the Confrontation Clause is nol implicated as no testimonial statement was admitted against petitioner.

of the four men, while Mr. Britto was the shortest. Ihus, we find no error in counsels' failme to attempt to introduce cumulative evidence. Petitioner's trial counsel acknow\edged as much at trial when he withdrew his request for a show up indicating that, "we just changed our mind about the demonstration. We don't think it's necessary[.]"[8]

Failure to Investigate

Petitioner states that trial counsel failed to investigate the story petitioner told them concerning how the case devek)ped the day before the murders. Specifically,

7

counsel failed to interview petitioner's stepmother, Mr. King's grandmother, Mr. King's sisters, and Mr. King's Uncle Kelly. Petitioner contends that, had these individuals been interviewed, "[p]etitioner's story would've been corroborated of what really happened in the underlying case." Petitioner also states that Sean Coles and the Stepp family were not interviewed.

Petitioner, however, fails to demonstrate what such investigation would have yielded. Petitioner does not outline the evidence these individuals allegedly possess, and at his omnibus hearing, he admitted that he could not remember whether he asked trial counsel to interview Mr. Coles. Accordingly, petitioner has failed to demonstrate either

---

[8] This Court also notes that petitioner's first-degree murder convictions were predicated on the felony murder rule. Therefore, evidence concerning which codefendant exited the Stepp home last, and then, inferentially, which pulled the trigger, is immaterial. That deaths occurred during the commission of an enumerated felony, irrespective of who pulled the trigger, is sufficient to sustain a felony murder first-degree murder conviction. See W.Va. Code 61-2-1 ('Murder . . . in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four, chapter sixty-a of this code, is murder of the first degree.").

that counsel was deficient or that the outcome of his trial would have been different had these individuals been interviewed.

Failure to Call Witness

Petitioner argues that his trial counsel was ineffective in failing to call the murdered victims' six-year-old daughter to testify at trial. Petitioner claims that, in her statement to police, the young girl stated that the shooter had "twisties" in his hair. According to petitioner, this described Mr. Britto's hairstyle and was, therefore, exculpatory. Petitioner also states that, even if trial counsel did not want to call her as a witness, they could have requested a deposition from her.

Petitioner has failed to demonstrate that counsel's failure to force a small child to testify regarding her parents' brutal murders amounts to deficient representation rather than sound trial strategy. Petitioner was not prevented from arguing at trial that Mr. Britto was the shooter. Indeed. the trial record reflects that this assertion was made known to the jury. Accordingly, petitioner has failed to establish that the failure to call the young girl amounted io deficient representation or that the outcome of his trial would have been differnt had her testimony been elicited.[1]

## Failure to Obiect to Leadiæ Questions

Petitioner contends frat trial counsel failed to object to the prosecutor's leading questions during Mr. King's direct examination. Petitioner, though, fails to identify a deprivation of any constitutional right in asserting this ground. Il has long been held that "[a]habeas corpus proceeding is not a substitute for a writ of error in Ihat ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 4, State ex rel. Farmer P. McBride, 224 W.Va. 469, 686 SE.2d 609 (2009) (citation omitted).

## Failure to Move for Change of Venue

Petitioner argues that his trial counsel was ineffective for failing to move for a change of venue. Petitioner contends this was a "high profile case in a small community." At petitioner's pretrial conference held on April 12, 2002, petitioner's. trial counsel to the trial court that

> we have the defense of this case and the issue of change of venue not once
> or twice, Judge, but three or four times. And, for example, on the change of
> venue, he would bring that up and we'd explain to him how we felt like we were

---

[1] Petitioner's assertion in this regard also ignores the fact that he was convicted of felony murder. As explained above petitioner's first-degree murder convictions stand under the felony murder rule even if he did not pull the trigger.

9

fine here in McDowell County. . . And he would be agreeable with that. And we've discussed it again Ioday. And he appeared to me to, again, be agreeabie to that.

Petitioner, nonetheless, maintained that he wished to move för change of venue.

The trial court informed {he parties.

As far as (he change of venue is concerned, and I have thought about this myself, I have been in high profile cases, as you have yourself, . .

During the jury selection, if it becomes apparent that l.ve cannot select a jury out of the panel that we have, which is about 50 jurors that we have, and think Judge Stephens has probably an equal amount of jurors, then I probably would raise the issue as to whether or not I thought that we could not get a fair and impartial jury.

So, as far as the change of venue is concerned, we will know during the voir dire whether or not there can be a jury selected.

. ., So as rar as lhe change in venue is concerned, I'm very, very sensitive 10 this defendant receiving a fair trial and that is an option that have kept open.

The trial court, therefore, indicated that it would entertain a motion for change of venue if an impartial jury could not be empaneled. Once trial began, prospective jurors were questioned regarding their knowledge of the parties and the facts of this case. There was no difficulty empaneling an impartial jury.

The foregoing establishes that counsel was not deficient in representing petitioner as they discussed this issue with petitioner multiple times. The trial court aiso was cognizant of the issue and informed the parties that it would consider, and likely grant. a motion for change of venue if they were unable (o empanel an impartial jury. Such motion was unnecessary, however. Accordingly, petitioner also fails to demonstrate that the result of his trial would have been different had counsel moved for a change of venue.

10

## Failure to Object to Use of Statements Obtained in Violation of Fifth Amendment

At the time ·of petitioner's arrest, he was given his Miranda warnings, Following his arrest, he was transported to the Bluefield Police Department and again given his Afiranda warnings. In fact, petitioner initialed and signed a waiver of rights form. which memorialized these warnings, his understanding of them, and his waiver.

During an interview with Trooper Michael Crowder of the West Virginia Slate Police, petitioner made certain admissions. Petitioner now contends that Trooper Crowder did not specifically infom him of his rights under Miranda and that he shoved his forearm on petitioner's throat.

Petitioner also argues that Officer William T. Jones, of the Bluefield Police Department, enlisted petitioner's father 10 assist with eliciting a confession. Petitioner contends that, when alone with his father. his father instructed him not to say anything without an attorney. Petitioner maintains that he followed his thther's advice and that his father heard petitioner request an attorney. Counsel, however, failed 10 call petitioner's father at the suppression hearing.

The trial court held a suppression hearing on March 6, 2002, and Trooper Crowder testified about his interview of petitioner. The State specifically asked Trooper Crowder, "Did you, or anyone in your presence, make any threats toward him, physical threats or other threats?" Trooper Crowder responded, "Absolutely not." Petitioner did not object 10 this testimony or contradict it in any way at that time.

Trooper Crowder also testified at the suppression hearing that petitioner never asked to stop the interview ot for an attorney. Likewise, Trooper Crowder testified at petitioner's omnibus evidentiæ•y hearing that petitioner never invoked his right to remain silent or to an attorney.

11

At the suppression hearing, Officer Jones testified that, after being interviewed by Trooper Crowder, petitioner requested to speak with him. In other words, petitioner initiated the interview with Officer Jones. During the interview with Officer Jones, which was recorded, petitioner never asked for any attorney. At a point during the interview, petitioner did indicate that he no longer wished to proceed. and the interview was stopped.

As detailed above, petitioner offered no credi%le evidence that he requested an attorney prior to or during police questioning. As a result, we find that his statement to Trooper Crowder was not obtained in violation of the Fifth Amendment. Moreover, counsel was not ineffective in this regard as the issue was addressed at a suppression hearing. At the pretrial hearing, the trial court even found that its ruling would not have changed had evidence been admitted by petitioner's father that petitioner requested an attorney. Thus, petitioner has failed to satisfy either prong of Strickland,

## Failure to Object to Robbery Jury Instruction

Petitioner asserts that trial counsel's failure to object to the robbery jury instruction amounts to ineffective assistance of counsel because it failed to contain all of the elements of the offense. During its deliberations. the jury requested an explanation of the robbery count. Petitioner, therefore, argues that this should have alerted counsel to the fact that jury had difficulty understanding the instruction given.

At trial, the jury was instructed that

> [r]obbery of the first-degree is committed when any person who commits or attempls to commit robbery by committing violence to the person, including but not limited to, partial strangulation or suffocation, or by striking or beating. Or, two, uses the threat of deadly force by the presenting of a fireann or other deadly weapon.

12

This instruction is based on West Virginia Code 61-2-12, which sets forth that {a]ny person who commits or attempts to commit robbery by:

(l) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guihy of robbery in the first degreel.]

Petitioner submits that the jury should have been instructed on the common law definition of robbery, which is the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods." Syl. Pt. 1. Saue Harless, 168 W. Va. 707, 285 S.E.2d 46} (1981). Petitioner's counsel did not request this definition or object to the one given at trial; rather, trial counsel agræd to the robbery instruction given.

13

"The general rule in West Virginia is that '[a]n instruction to the jury is proper if it is a correct statement of the law and if sufficient evidence has been offered at trial to support it.'" State v. Stacy, 181 W.Va. 736, 384 S.E.2d 347 (1989) (citation omitted).

Even assuming error in counsels' failure to request the common law definition of robbery, we find *hat petitioner has not demonstrated that the outcome of his trial would have been different had the jury been instructed on the common lav; definition of robbery because petitioner has failed to identify any element of this definition for which the State failed to present evidence.

At trial, Mr. King testified that petitioner picked him up and, along with the two other codefendants, drove to Mr. Stepp's home to purchase marijuana. After the men entered the Stepp residence to negotiate the drug buy, petitioner complained about the quality of the marijuana presented. According to Mr. King* Mr. Stepp informed them that he knew where to get belier marijuana. and petitioner asked Mr. Stepp whether he had the money to purchase better marijuana. Mr. King testified that the dialogue between petitioner and Mr. Stepp continued as Mr. King turned to look in the living room at Ms. Stepp watching TV. Mr. King said,

> when turned back into the kitchen, I [saw petitioner] with a gun up 10 John Stepp's head . , . He was telling him, asking him to give him the money. . . . he just had the gun to his head and was asking him where is the money. I know you got some money in the house, where's the money. .

Mr. King testified that petitioner told Mr. Stepp he would kill him if he did not give him the money.

When Mr. Stepp denied having money. petitioner directed Mr. Britto to assist him with moving the Stepps to the rear of the home and instructed Mr. King and Mr. Jones to search the home for money. Mr. King further testified that, after hearing the gunshots and entering the car in which they came, his codefendants joined him in the car and they

drove away. [23] The four men proceeded to Mr. Britto's home.

Mr. King testified that, after arriving at Mr. Britto*s home, Mr. Britto and petitioner proceeded to one room separately while he and Mr. Jones remained in a different room. Mr. Britto and petitioner were in the room for approximately five minutes, and then petitioner came out and left Mr. Britto's home       Mr. King and Mr. Jones.

Officer Jones investigated the Stepp murders after Mr. King confesscd to his involvement. During the course of his invesligalion, he searched Mr. Britto's apartment with other officers. One of the officers recovered $4,550 in Mr. Britto's apartment, and another recovered a gun. Ammunition was also recovered from Mr. Britto's bedroom. [4]

Accordingly, there was sufficient evidence adduced 10 meet the elements of common law robbery, and petitioner cannot demonstrate Ihat the result of his trial vvould have been different had the jury been instructed on this common law definition,

Faiiure to Object ID Trial Courl's Failure 10 Instruct Jury That Counsels* Arguments Are Not to be Considered Evidence

Petitioner contends that it is "well settled . . . that the court's instructions are not to be considered evidence" and it is "long settled law that argument made by [clounse\ is

---

[2] Notably, Mr. King also testified that petitioner was the last individual to exit the Stepp home.

[3] *Mr. King testified that he asked petitioner what he did with the gun. Petitioner responded to Mr. King that it was not his gun; rather, it belonged to Mr. Britto.

[4] This Court notes thal the attempt to commit robbery is also defined as firstdegree robbery where violence is committed to the person or the threat of deadly force is used. W.Va. Code 61-2-12. Accordingly. that money was ultimately recovered is not critical to the analysis.

15

not to be considered evidence in this case." Petitioner asserts that counsels' failure to object to the trial court's failure to offer instructions on these points of law amounted to ineffective assistance of counsel and a violation of his due process and Sixth Amendment

Petitioner fails to highlight any particular argument offered by counsel that would have altered the outcome of his trial. Moreover, petitioner fails to any lav,'. obligating a trial court to offer these instructions or demonstrating that such failure amounts to a deprivation of his constitutional rights. Accordingly, there is no merit to this contention,

## Failure of Appellate Counsel to Highlight Erroneous Jury Instructions

Petitioner filed a direct appeal of his convictions; and he was appointed nev.,• counsel to prosecute this appeal. Petitioner argues that his appellate counsel failed to properly prepare his appeal by failing to challenge the jury instruction on robbery.

As set forth above, petitioner cannot demonstrate that the result of his trial would have been different had this instruction been given. Accordingly, petitioner is not entitled to relief on this ground.

## Failure of Appellate Counsel to Raise as Error the Trial Court's Instructions

Petitioner asserts that the trial court instructed the jury that its instructions and counsels' arguments are considered as evidence. Petitioner contends that appellate counsel should have known that this is a misstatement of the and alleged such instruction as error.

This assertion is unsupported by the trial transcript: no such instruction was given. Accordingly, petitioner is not entitled to relief on this ground. Moreover, even if the jury

16

had been so instructed, petitioner has failed to demonsü•ate that the result of his trial would have been different in light of the evidence properly adduced.

## Failure to Seek Psychological Evaluation

Petitioner asserts that trial counsel was defective in failing to seek a psychological evaluation to de!ennine competency to stand trial and criminak responsibility where there was evidence thal he suffered from psychological disorders. Petitioner claims that he informed trial counsel that he suffered from severe mental disorders during grade school and had been seen by several school psychologists. Although petitioner contends that he was diagnosed with several psychological disorders, he fails to identify any other than 10 say "it is the belie[fl of the [pletitioner thal he was diagnosed in the past with ; paranoid schizophrenia disorder.»»

In further support of this ground, petitioner argues that his failure to offer testimony on his own behalf at the suppression hearing and at trial could be explained by a mental disorder. Petitioner explains that, because testimony at the suppression hearing could not be used against him, he' had nothing to lose in testifying. Finally, incriminating evidence was offered against petitioner at his trial. Petitioner says his only chance of defending against this evidence was to testify. Because petitioner refrained from testifying, he contends that a psychological evaluation could have determined whether a mental disorder prevented him from {estifying.

Petitioner•s self-serving slatcments notwithstanding, petitioner offers no evidence to substantiate any claim of a men(al disorder that would have provided a viable defense at trial. Also, al petitioners omnibus evidentiary hearing, trial counsel McGinnis

17

E. Hatfield Jr. testified that he does not recall petitioner discussing competency issues or requesting a psychoiogical exam.

An attomey's trial decisions

> may be based on information given to him or her by the petitioner: 'The reasonableness of counsel's actions may bc determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information-

Legursky, 195 W.Va. at 326-27, 465 S.E.2d at 428-29 (citation omitted). Thus, petitioner's after-thefact assertions that he suffered from a mental disorder years prior to the commission of the crimes of which he was convicted, and that such mental disorder "could" explain certain decisions he made, lack credibility and fail to demonstrate entitlement to habeas corpus relief.

Failure to Question Polenlial Jurors Regarding Bias and Prejudice

One of petitioner's trial attorneys, Mr. Hatfield, was a municipal judge for the City of Bluefield, West Virginia. Petitioner asserts that Mt. Hatfield failed to ask on the juror questionnaire whether any potential juror had appeared before him. Petitioner contends that this failure amounts to deficient representation because, if a juror or one of the juror's close friends or family members had received an adverse decision from Mr. Hatfield, it could have affected the deliberalions in his case..

A review of the trial transcript in this matter reveals Ihat prospective jurors were asked specifically whether any knew Mr. Hatfield:

> With the defendant, Mr. Molineaux, are his attomeys, McGinnis E. Hatfield, Jr., better known as Mackie Hatfield, and Steven Paesani. they're both representing Mr. Molineaux in this case. Have any of you or members of your family ever been represented by either Mr. Hatfield or Mr. P.aesani?

(No Response)

> Are any of you acquainted with either of lhose gentlemen personally. on a personal. basis?

(No Response)

Accordingly, we find no merit to this assertion.

## Failure to Object 10 Hearsay

Following the murders, officers searched Brandon Britto's apartment. They found a 9 mm handgun, which proved to be the murder weapon. At trial, Officer Jones testified as follows:

> Q: What happened when those men indicated that you could look into the apartment?

> A: Britto . . made the implication about Mr. MoJineaux after Sergeant Pauley had found the gun. that Mr. Molineaux had brought the gun back up to the apartment building.

Petitioner argues that this testimony was inadmissible hearsay and violative of his rights under the Confrontation Clause. Counsel, however, failed to object or request a limiting instruction.

Additionally, counsel purportedly rendered ineffective assistance in failing to object to Trooper Crowder's testimony and to the admission of his codefendants' statements, the latter admissions violating the Confrontation Clause.

Assuming, without deciding, that counsel erred in failing 10 object to this testimony, we nonetheless find that petitioner's ineffective assistance of counsel claim cooceming the failure to object is meritless. Petitioner cannot demonstrate that the result of his trial would have been different had objections to this testimony been lodged given ᠆Mr. King's testimony, recounted above.

Failure to Investigate Forensic Evidence

Petitioner states Ihat "[ili is believed that the State has withheld physical evidence" from him. Speci fically, petitioner asserts that chain of custody information for "all items of evidence" has been improperly and prejudicially denied to him.

Petitioner's "beliefs" about the State's actions are insufficient to entitle him to habeas relief. Rather, petitioner bears the burden of proving this allegation by a preponderance of the evidence, Syl. Pt. 1 . Slate ex rel. Scou v. Boles. 150 W.Va. 453. 147 S.E.2d 486 (1966). Accordingly, pelitioner has failed to demonstrate that he is entitled to relief on this ground.

Failure to Call Certain Witnesses

Petitioner contends that trial counsel erred in failing to call Sergeant J. R. Pauley to testifr during his suppression hearing. Petitioner asserts that other officers offered

---

[13] Petitioner's reference to the admission of his codefendants' statements is supported only by citation to Offcer Jones's testimony quoted above. Nonetheless. petitioner's challenges under the Confrontation Clause are addressed iQfra.

testimony during the suppression hearing that was inconsistent "ith and contradictory to Sergeant Pauley's teslimony before. the grand jury. Specifically, petitioner asserts that Sergeant Pauley testified before the grand jury thal petitioner denied any knowledge of the murders, but Trooper Crowder testified at the suppression hearing to having obtained a confession from petitioner,

Petitioner also claims that trial counsels' failure to call Lieutenant Hehon to testify during trial mounted to ineffective assistance. Lieutenant Helton purportedly testified al an earlier proceeding that petitioner denied involvemem with the subject murders.

Again, given Mr. King's testimony at trial, petitioner has failed to establish that the result of his trial would have been different had these individuals been called either at the suppression hearing or at trial.

Failure to Rebut Evidence of Confession

Petitioner claims that counsel failed to introduce evidence that he did not confess to the murden to Trooper Crowder. Petitioner asserts that it is his "belief that each one of the [the police officers involved in the investigation ol' the murders and in interviewing him] knew that the five[-]page 'confession' [obtained by Trooper Crowder] was not true."

Petitioner also points to the fact that at a November 26. 2001. hearing, the State was unaware of a statement petitioner had provided as the State did not have the police

---

"Petitioner also states that Lieutenant Helton "would've testified that on April I I 1 2001 he was present during the entire time [pletitioner was inlerviewed by Trooper Crowder and that the [p]etitioner never made any incriminating statements." Lieulenanl Helton testified al petitioner's omnibus hearing and made no such assertion.

report. Petitioner asserts that this is because he never gave an incriminating statement on April 1, 2001, the day he was interviewed by the police.

Petitioner also maintains that trial counsel was ineffective for failing to object to holding a suppression hearing without Sergeant Pauley, the lead investigating officer.

Petitioner claims *hat his statement to Trooper Crowder would have been suppressed had counsel objected 'because it would've been clear th[at] Trooper Crowder was not telling the truth relating to his notes and the 'confession.'"

Petitioner maintains that trial counsel was ineffective in failing to highlight these inconsistencies with the State's witnesses. Petitioner further claims that the failure to object 10 Trooper Crowder's testimony and secure Sergeant Pauley amounted 10 allowing perjured testimony.

Sergeant Pauley testified before the Grand Jury that peiitioner "gave part of a statement, he would start talking and then quit and start again. So we do have a panial statement from him, but he, basically denied any knowledge of it . . . this incident." Because ihe statement purportedly given 10 Trooper Crowder would have been obtained prior to Sergeant Pauley's grand jury testimony, petitioner claims that this suggests that Trooper Crowder lied about obtaining a statement from petitioner.

As with petitioner's prior claim. he has failed to establish that the outcome of his tria) would have been given Mr. King's testimony. Further. petiGoner's assertion thal Trooper Crowder lied about obtaining this statement lacks credibility. Petitioner examined Trooper Crowder at the suppression hearing and never once challenged Trooper Crowder's assertion that he obtained this stdtemenl. Additionally, Trooper Crowder's testimony al the suppression hearing was detailed as to his involvement in petitioner's arrest and the subsequent laking of petitioner's statement. Petitioner has failed to provide any evidcnce to substantiate his attack on Trooper Crowder's credibility.

## Failure to Develop Mitigating Evidence

Petitioner argues that his trial counsel provided "no defense at all" and that counsel's closing statement was meandering and 'tantamount to arguing nothing." Petitioner, however, fails to identify the existence of any mitigating evidence, frereby

tiiling to sustain his burden of proving this allegation.

Failure to Object IQ Hearsay

.At trial. Trooper Crowder testified regarding his elicitation of an oral statement from petitioner. Trooper Crowder look notes of petitioner's statement, which were introduced as evidence at trial. Trooper Crowder explained the organization of his notes to the jury and stated, "[petitioner] asked about the child, to see the picture. He was talking about the child al the scene. When he found [out] about the child there and that the child had been struck by a bullet." Petitioner argues that his trial counsel failed to object to this hearsay. Petitioner also states Ihat he was not provided with any medical evidence documenting the child's injury or describing petitioner.

Petitioner, again, fails to demonstrate that the result of his trial would have been different even had objections been raised in lhese instances. Petitioner was not charged with any crime relative the child. and this testimony explained the organization of and offered context to Trooper Crowder's notes. Accordingly. this claim fails.

## TRIAL COURT ERROR - JURY INSTRUCTION ON ROBBERY

In addition to petitioner's ineffective assistance of counsel claim predicated on counsels' failure to object 10 the robbery jury instruction given, petitioner also seeks

23

review of the instruction under the plain error doctrine given counsels' failure to object to the instruction.

Petitioner acknowledges that the trial co-urt's robbery instruction was taken directly from West Virginia Code 61-2-122 but he argues that the statute only states the means and manner by which a robbery is committed, differentiates between the two classes of robbery, and prescribes a penalty for each class. The specific elements of robbery are outlined in case law. The trial court's instruction did not instruct the jury that robbery included the unlawful taking of goods or money from the person, and the intent to permanently deprive the owner of their property. Thus, petitioner asserts that the jury was not instructed on {he essential elements of robbery or attempted robbery,

Under the plain-error doctrine. a court may, "in the interest of justice, notice plain error in the giving or refusal to give any instruction. whether or not it has been made the subject of objection." W.Va. R. Crim. P. 30; see also id. at R. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). "To (rigger application of the 'plain error' doctrine, there must be (1) an error, (2) thal is plain; (3) that affects substantial rights: and (4) seriously affects the fairness, integrity, or public reputaüon of the judicial proceedings." Syl. Pl. 7, SIGIe v, 

Milter, 194 W.Va. 3, 459 S.E2d 1 14 (1995).

But the plain error doctrine "is 10 be used sparingly and only in those circumstances where substantial rights are affecled, or the truth-finding process is substantially impaired, or a miscan•iage of justice would otherwise result." Syl. Pt. 2, in part, State Rogers, 215 W.Va. 499, 600 S.E.2d 211 (2004). Also, plain error is not typically recognized in the giving of an erroneous instruction, "even of constitutional

24

magnitude, where the giving of the erroneoos instruction did not substantially impair the truth-finding function of lhe trial." Siute v. Hutchinson, 176 W.Va. 172. 342 S.E.2d 138 (1986).

As set fonh above, the truth-finding funclion of the trial was not impaired as it relates to petitioner's robbery conviction. Accordingly, assuming any error with the robbery instruction, it does not rise to the level of plain error.

This Court also highlights that petitioner was also convicted of burglary, which is also a predicate offense for felony murder. Petitioner does not challenge the instruction given on burglary. At petitioner's sentencing, the triai court recounted that the jury convicted petitioner of both robbery and burglary and stated that. because petitioner's felony murder conviclions could be predicated on either his burglary or robbery convictions, il did not sentence him for either burglary or robbery. Therefore: even if this COM were to assume error with respect to the robbery instruction, petitioner's iäony murder convictions — the only convictions on which he was sentenced — still stand as a result of his burglary conviction. Accordingly, any such error is harmless error because petitioner cannot show that he is imprisoned under a void sentence." See W.Va. Code §

## PROSECUTORIAL MISCONDUCT

Petitioner contends that the State has not provided chain of custody information relating to the murder weapon, cicihes, bandanas, and all other evidence collected during

---

[15]"Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, State v. Blair, 158 W.Va. 647, 214 S.E.2d 330 (1975).
the investigation, despite being ordered to provide such evidence. Petitioner argues that

this amounts io a Brady violation..

> There are three components of a constitutional due process violation under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194. 10 L.Ed. 215 and stare v. Hal]ield. 169 W.Va. 191.286 S.E.2d 402 (1982):
> ( l) the evidence at issue must be favorable to the defendant as exculpatory , or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

syl, Pt. 3,          Ballard, 236 W.Va. 509, 782 S.E.2d 204 (2015) (citation omiued).

. Petitioner fails to articulate how chain of custody information would be exculpaiory or useable as impeachment evidence. hie also fails to substantiate that any evidence was suppressed by the State. Criiically. petitioner fails to explain how any alleged failures prejudiced him at trial, panicularly given that petitioner admits to being at the scene of the murders.

In further support of his prosecutorial misconduct claim. petitioner asserts that the prosecutor presented false testimony regarding his confession to Trooper Crowder. Petitioner contends that the fact that other officers stated that petitioner did not confess renders Trooper Crowder's claimS concerning a confession incredible. Petitioner also highlights the length of time that passed before Trooper Crowder's notes of the confession were ultimately provided to the Slate.

> . In order to obtain a new trial on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate that (l) the prosecutor presented false testimony. (2) the prosecutor knew or should have known the testimony was false, and (3) the false testimony had a material effect on the jury verdict.

Maryland, 373 U.S. 83, 83 S.Ct. 194 (1982).
syl. Pt. 2, stale ex rel. Franklin v. McBride, 226 W.Va. 375, 701 S.E 2d 97 (2009).

26

Petitioner has not satisfied his burden under Franklin, That petitioner did not confess to all investigating officers does little to discredit Trooper Crowder's testimony concerning a conIZssion. Likewise, the length of time that passed before the notes were produced fails to establish that the testimony concerning the confession •was false. As noted above, petitioner did not dispute the authenticity of the confrssion at his suppression hearing. Petitioner's after-the-fact assertion that he did not confess fails to demonstrate that Trooper Crowder's testimony was fälse.

Petitioner also has presented no evidence showing that the prosecutor knew or should have known any such testimony ¹,vas false. Accordingly, petitioner has Pdiled to establish that the prosecutor committed misconduct in eliciting testimony regarding petitioner's confession,

## SUFFICIENCY OF THE INDICTMENT

Petitioner contends that an integral element of a robbery charge is a description of the property taken. Petitioner's robbery and conspiracy to commit robbery charges in the indictment failed to include "what was stolen or permanently deprived,"

Petitioner cites no authority to support his assertion that this infbrmation Illust be included within the indictment. "1k) the comrary, "[a]n indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." Syl. Pt. 3, in part, Sla/e v. [Vallace, 205 W.Va. 155. 517 S.E.2d 20 (1999) (citation omitted). An indictment is sufficient "if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed tvvice in jeopardy." Id at Syl. m. 6. Further, "{aln indictment

for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense Wilh which he is charged and enables lhe court to determine the statute on which the charge is based." Syl. Pl. 3-, State v. Hall, 172 W.Va. 138, 304 S.E.2d 43 (1983).

Additionally,

> Rule 12(b)(2) of the . West Virginia Rules of Criminal Procedure requires that a defendant musi raise any objection to an indictment prior to trial. Although a challenge to a defective indictment is never waived, this Court lileral]y will construe an indictment in favor of validity where a defendant fails timely 10 challenge its sufficiency, Without objection. the indictment should be upheld unless il is so defective that it does not, by any reasonable instruction, charge an offense under West Virginia law or for which the defendant was convicted.

Syl. Pt. 5. Stale v. Johnson, 219 W.Va. 697, 639 S.E.2d 789 (2006) (citation omitted). Petitioner failed to challenge the indictment prior to trial; accordingly, his assertion regarding the indictment is insufficient to warrant habeas relief.

## ACTU AL INNOCENCE

Petiiioner contends that he is innocent and that the evidence withheld in violation of Brady will Brave his actual innocence. Petitioner fails 10 outline any such withheld evidence or how il establishes his innocence. Importantly. petitioner was convicted of felony murder. He does nor dispute being present al the scene oi' the crime; accordingly. his assertion that he did not pull the trigger, which was contradicted at trial in any event. affords him no relief,

## DIFFERENT CASE NUMBERS

Petitioner asserts that different case numbers were used in his underlying criminal case, and he '•has not been able 10 find any legitimate reason the separate case

numbers[.]" Petitioner fails To explain the impon offhjs, lel alone establish that the usage of different case numbers amounts to a violation of his constitutional rights. Accordingly. he is not entitled to relief on this ground.

## VIOLATION OF PROMPT PRESENTMENT

Aside from incorporating arguments previously made, petitioner fails to substantiate this claim. Nonetheless, even if this Court were to accept petitioner's claims as true and assume he wishes to assert this ground to support exclusion of his confession. it has been held Ihat "Lo]rdinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confessi under our prompt presentment rule," Sy!. Pt- 14, Slate v. Newcomb. 223 W.Va. 843, 679 S.E.2d 675 (2009) (cilations and internal quotations omitted).

## VIOLATION OF RIGHT AGAINST SELF-INCRIMINATION

Petitioner contends his right against self-incrimination was violated when the offcers failed to re-advise him of his Miranda rights. The argument previously presented is incorporated within this stand-alone claim.

'I'here js no merit to this claim. A! petilioner*s omnibus evidentiary hearing, testimony was adduced that petitioner was advised of his Miranda rights on several occasions, and he completed a Miranda rights waiver form.

## CONFRONTATION CLAUSE VIOLATIONS

As addressed above, petitioner raised challenges to certain testimony under his ineffective assistance of counsel claim. Petitioner incorporates by references arguments previously made in assefling a standalone claim. To the extenl not addressed above, this

Court makes the following findings and conclusions

"The Confrontation Clause contained in the Sixth Amendment to the United States Constitution provides: 'In all criminal prosecutions, the accused shall . be confronted with the witnesses against him.' This clause was made applicable to the states through the Fourteenth Amendment to the United States Constitution." Syl. Pt. 1, State *v.* James Edward S. : 184 W.Va. 408, 400 S.E.2d 843 (1990), overruled on other grounds by

*State*Y. Mechli,,g,      W.Va. 366, 633 S.E.2d 31 1 (2006).

In support of pelitioner•s Confrontation Clause claims, petitioner cites to Crawford v. Washington, 541 U.s. 36. 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). west Virginia adopted the Crawford standard in Stale v. Mechling. 219 W.Va. 366, 633 S.E.2d 31 1 (2006). The Supreme Court of Appeals of West Virginia made clear however, that "Crawford/Mechling [is to] be given prospective application only inasmuch as it is a new principle of law. [and] retroactive application of which would retard its operations and produce inequitable results." State v. Kennedy, 229 W.Va. 756. 776. 735 S.E.2d 905. 925 (2012). Accordingly, petitioner's reliance on Crawford. which was decided after his trial took place. is misplaced, and his analysis under Crawford affords him no relief here. As a resull of [he foregoing rulings, petitioner's Amended and Supplemental

Petition for a writ of Habeas Corpus is hereby DENIED and DISMISSED.

## PETITIONER'S MOTION FOR PREPARATION OF TRANSCRIPTS

. Petitioner requests that (his Court order production of transcripts from the omnibus evidentiary hearing prior to issuing its ruling on petitioner's habeas petition.

Although petitioner "feels" that such preparation will "aid the courl in its determination" of his habeas, this Coun finds that the issues have been adequatel)'

30

presented and that reliance on the transcripts is unnecessary for resolution of petitioner's claims. Accordingly, "Petitioner's Motion for Preparation of Transcripts for CourtPurposes Prior to Ruling on Petitioner's Requests for Habeas Corpus Relief' is hereby

DENIED. [5]

The Court directs the Circuit Clerk to distribute attested copies of this Order to the following counsel of record:

> Dennie S. Morgan Jr.
> Morgan Law
> P.O. Box 476
> Welch, WV 2480!
>
> Emily K. Miller
> Assistant 'rosecuting Attorney
> 93 Wyoming Street, Suite 207
> Welch, WV 24801

ENTER: é*-F 28, 2018

_____
CHAR ES M, VICKERS. JUDGE

---

[5] Petilioner, by separate motion, also alerts this Court to a typographical error concerning lhe age of-the Stepps' daughter. Petitioner•s -motion" is hereby acknowledged.

31